Charles WILKEN and LaVerle Wilken, Plaintiffs,

v.

INTERNATIONAL HARVESTER COMPANY, Defendant and Third Party Plaintiff.

TRAFFIC TRANSPORT ENGINEERING, INC. Defendant and Third Party Plaintiff,

v.

CLARK TRANSPORT COMPANY, INC., Third Party Defendant.

No. C9–84–118.

Supreme Court of Minnesota.

March 8, 1985.

---

Michael Healey, St. Paul, for Wilken.

Richard A. Bowman, Minneapolis, for Intern. Harvester Co.

Robert T. Stich, Minneapolis, William M. Bradt, St. Paul, for Clark Transport Co.

SIMONETT, Justice.

Under *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (Minn.1977), a third-party tortfeasor is entitled to contribution from a negligent employer in an amount proportional to the employer's fault "but not to exceed its total workers' compensation liability to plaintiff." *Id.* at 689. This case presents us with certified questions as to what compensation benefits are to be included in this "total workers' compensation liability" and how they are to be calculated.

In August 1972 plaintiff-employee Charles Wilken, while working for Clark Transport Company, Inc., was injured while loading a semi-truck onto a transport trailer. The semi-truck was manufactured by International Harvester Company, and the trailer was manufactured by Traffic Transport Engineering, Inc. After collecting workers' compensation for over 5 years, Wilken and his wife brought tort actions against International Harvester and Traffic Transport Engineering in the United States District Court for the District of Minnesota. These two defendants, in turn, filed third-party complaints for contribution against plaintiff's employer, Clark Transport.

During the trial, defendant Traffic Transport was dismissed from the case on a *Pierringer* settlement made with plaintiffs. The jury returned a verdict awarding $1,250,000 to Charles Wilken. The jury attributed 75% of the fault to defendant International Harvester, 5% to Traffic Transport, and 20% to the employer-third party defendant Clark Transport. On May 22, 1981, the trial court entered judgment in favor of Charles Wilken and against defendant International Harvester for the verdict, less the amount allocated to the settling defendant, which judgment, on appeal, was affirmed.

International Harvester has now paid Charles Wilken the amount of his tort judgment, plus interest, costs and disbursements. This judgment further provides, however, that International Harvester recover from the employer, Clark Transport, by way of contribution, 21.05% of the judgment, or $246,679.68, except that the amount of contribution is not to exceed "the total Worker's Compensation liability" of the employer's insurer.

This case comes to us because the parties have been unable to agree on what is Clark's total workers' compensation liability. Clark has paid temporary total disability benefits from the date of injury to August 21, 1978, a period of 312.6 weeks, these payments totaling $25,000. Clark has also paid medical expenses to the date of the tort judgment in the amount of $27,659.72, but further medical expenses may be incurred in the future. Also, since January 1, 1976, the employee has been receiving supplementary workers' compensation benefits, which to the date of the tort judgment total $22,601.12. Further, since June 12, 1977, the employee has been receiving social security disability benefits, for which the employer Clark has asserted a right of setoff under Minn.Stat. § 176.-101, subd. 4 (1971) (subsequently amended). Finally, as a result of the employee's substantial tort recovery, Clark would appear to have a sizable credit under Minn.Stat. § 176.061, subd. 6 (1971) (amended 1976, 1979, 1981, & 1983), against any future

compensation benefits it might owe the employee. To resolve the dispute over contribution liability, International Harvester, in November 1983, moved to amend the tort judgment to specify the amount of Clark's contribution liability. This motion having raised important and doubtful questions of Minnesota law, the Federal District Court certified three questions of law to this court.

## I.

The first certified question asks if the *Lambertson* contribution claim includes workers' compensation benefits paid or payable to the injured employee *both before and after* entry of the judgment against the negligent employer in the tort action, or if the contribution claim includes only those benefits paid or due as of the date of the judgment. Neither *Lambertson* nor *Johnson v. Raske Building Systems, Inc.,* 276 N.W.2d 79 (Minn.1979), involved benefits payable in the future, so this question was arguably left open. If benefits payable in the future are included, the Federal District Court then asks how these future benefits are to be calculated, and by whom.

## A.

■ We answer that the tortfeasor's contribution claim against the negligent employer does include workers' compensation benefits which are due and payable after the judgment is entered in the tort action. This result was foreshadowed in *Lambertson,* where, in the syllabus, it was said that contribution is not to exceed benefits "paid or to be paid," and again in *Johnson,* 276 N.W.2d at 80–81, where we described the amount of contribution recoverable as the sum of all compensation benefits "payable" to the employee.

In *Lambertson* we were concerned with redressing, on a limited basis, the unfairness created by the third-party tortfeasor being required to pay all of the employee's tort damages, even the part attributable to the employer's fault, with the result that the third-party tortfeasor "is forced to subsidize a workers' compensation system in a proportion greater than his own fault and at a financial level far in excess of the workers' compensation schedule." *Id.,* 312 Minn. at 120, 257 N.W.2d at 684. It seems to us that if the negligent employer were to be allowed to limit his contribution liability to only prejudgment benefits, this subsidy would be further exaggerated. For instance, in this case, employer Clark Transport claims that its contribution liability should be limited to the $52,660 in compensation benefits that it has already paid exclusive of supplementary benefits, even though, of the tort damages paid by the tortfeasor, $246,679 has been attributed to Clark's fault. Furthermore, if contribution liability is only to the date of the tort judgment, the amount of that liability may depend on the fortuity of when the tort case is sued and brought to trial.

Clark argues, however, that including future benefits in its contribution liability impairs its credit rights under the Workers' Compensation Act. Under Minn.Stat. § 176.061, subd. 6 (1971), it will be recalled, the employee's tort recovery is distributed as follows: First, after payment of collection costs, the employee receives one-third of the remainder outright; next, out of the balance, the employer, even if negligent, is reimbursed for all compensation benefits paid; and, finally, any balance remaining is paid to the employee subject to a credit to the employer against any compensation benefits the employer is obligated to pay in the future. Clark argues that so long as it has a credit, it has no liability under the Workers' Compensation Act to pay benefits, and, therefore, there is no basis for imposing contribution on the employer for future benefits payable which are covered by a credit. Clark also argues that if, after the credit has been used up, the employee is still entitled to benefits which the employer must then pay, the employer, who has already paid his contribution obligation to the third-party tortfeasor, pays "double."

These arguments misconceive the *Lambertson* rationale. Even with the credit,

the employer's underlying liability to pay future compensation benefits under the Act exists, just as it did before the employee obtained his tort recovery. Indeed, it is only because underlying liability exists that there is a credit. But now, because of *Lambertson,* the employer who is found at fault must "contribute" to the tort recovery up to its workers' compensation liability. The negligent employer now must pay its future workers' compensation payments over to the third-party tortfeasor to whom such compensation payments have, in effect, been assigned, whereas before *Lambertson* the employer simply relied on its credit to make no compensation payments at all. This is precisely what *Lambertson* contemplates. As we explained in *Horton v. Orbeth,* 342 N.W.2d 112, 115 (Minn. 1984), "while *Lambertson* speaks in terms of contribution, the real impact of the decision was the limitation of a negligent employer's right of subrogation." We went on to say, "The employer was obligated to contribute only up to the amount of workers' compensation benefits payable." *Id.* In other words, under *Lambertson,* the negligent employer's contribution obligation is used to offset that employer's right of subrogation for benefits paid and its right of credit for future benefits payable. If an instance should arise when the negligent employer, having paid its *Lambertson* contribution claim and its credit having been exhausted, finds that the employee is still entitled to periodic benefits which the employer must pay, the employer has no cause to complain. In such a situation, there is no longer any common liability between the third-party tortfeasor and the negligent tortfeasor under *Lambertson,* and the employer pays such additional benefits as part of its total compensation liability to the employee under the Act. *Cf. Kordosky v. Conway Fire & Safety, Inc.,* 304 N.W.2d 616 (Minn.1981) (employer required to absorb a portion of the employee's collection costs, thus reducing the employer's reimbursement to less than the contribution it pays).

We hold that the employer contributes to the third-party tortfeasor an amount equal to its proportionate share of the employee's tort recovery but not to exceed the amount of workers' compensation benefits the employer has paid and will in the future pay to the employee.

### B.

This leads us to the second part of the first certified question. How is the employer's future contribution to be calculated? We answer that the employer's future contribution is to be reduced to its present value as of the date of the contribution judgment in the tort action and the contribution claim is to be paid in a single, lump sum payment.

Employer Clark Transport argues that contribution should be recoverable only as future payments periodically come due. Instead of predicting what the future payments will be, it is fairer, says Clark, to wait until the payments actually occur, when the parties will know exactly the sums involved; moreover, says Clark, on a continuing payment basis, the employer is not saddled with an immediate lump sum payment. We think the merit of this argument, however, is outweighed by the advantages of a final, one-time resolution of the contribution claim made at the time the contribution judgment is entered. These kinds of contribution claims should not linger on for the lifetime of the employee.

Finally, Clark argues that it is impossible to calculate a single award, which attempts to anticipate what the future will hold, with any degree of reasonable certainty. What is the employee's life expectancy as an injured person? What if the disabled employee becomes gainfully employed? And what about future medical expenses? These are, indeed, hard factors to calculate. Still, these matters are no more difficult to weigh in a contribution claim than they are for the trier of fact in a tort action who must make a lump sum award for past, present, and future damages. The contribution award, like the tort verdict, necessarily involves approximations based on reasonable assumptions. True, the employ-

ee next year may die or recover, but these uncertainties do not prevent the measurement of a lump sum verdict against the third-party tortfeasor.

It seems to us, for the most part, that these calculations are to be made by the trial court, in much the same manner as it handles the issues in any third-party complaint for contribution or indemnity. The jury decides if there is liability for contribution. It would be advisable, we think, that a special interrogatory be submitted to the jury for a separate finding on medical expenses paid and payable. *See also* Minn. Stat. § 176.061, subd. 7 (1984) (employer has a separate cause of action for medical expenses, which, if included in the employee's tort action, should be separately stated). After the verdict is in, the trial court can take further evidence to aid it in calculating the amount of the contribution claim and the discount factor. Much of this evidence is of the kind, it would seem, that is best submitted by affidavit, as was done in this case.

## II.

The next question certified by the Federal District Court is whether the negligent employer's contribution liability under *Lambertson* includes workers' compensation supplementary benefits. We answer that supplementary benefits, whether paid or to be paid in the future, are not to be included as part of the employer's contribution liability.

Supplementary benefits, as the name implies, are used to supplement the basic weekly compensation benefits paid to an injured employee. Basic benefits are paid in accordance with the law as it exists on the date of injury. Supplementary benefits are an additional payment and are payable in two situations: (1) when an employee has been totally disabled for a designated period and his compensation rate is less than a certain percentage of the statewide average weekly wage, Minn.Stat. § 176.-132, subds. 1, 2 (1984); and (2) when the employee is permanently and totally disabled for a designated period and, because of a setoff for government old age or disability benefits received by the employee, the employer has reduced his benefit payments below the designated percentage of the statewide average weekly wage. Section 176.132, subd. 2(d) (1984). The designated percentage of the statewide average weekly wage has varied over the years; the current figure is 65%. Minn.Stat. § 176.132, subds. 2(a), (d) (1984).

Employee Wilken was injured in August 1972 and qualified for the then maximum compensation rate for temporary total and permanent disability benefits of $80 a week. Minn.Stat. § 176.101, subds. 1, 4 (1971). Wilken became eligible for supplementary benefits on January 1, 1976, when the supplementary benefit rate for the first time exceeded his basic compensation rate. Then on August 21, 1978, the employee began receiving social security disability benefits. At this point, Clark's compensation insurer had paid approximately 313 weeks of benefits at $80 a week, or slightly in excess of $25,000. Consequently, since August 21, 1978, Clark has claimed a setoff for social security payments of $83.51 a week received by the employee, with the result that Clark and its insurer have not, since that time, made any payments to the employee for temporary or permanent total disability, although, of course, the employee continued to receive supplementary benefits and his medical expenses.

On May 22, 1981, Wilken obtained his tort judgment against International Harvester. To the date of the judgment, Clark had paid the employee supplementary benefits totaling $22,601.12 for which it has been reimbursed by the Special Compensation Fund. It appears that payment of supplementary benefits was discontinued on the date of the judgment, apparently because of the tort recovery credit. *See* Minn.Stat. § 176.132 (1984). In any event, assuming that the employer had properly taken the social security offset and assuming there had been no third-party tort recovery credit, the employee Wilken would now be receiving supplementary benefits, currently at the rate of $204 a week.

It is the position of the third-party tortfeasor that employer Clark's contribution liability should include the supplementary benefits paid to date of judgment as well as the value of supplementary benefits payable thereafter but for the employee's third-party tort recovery. We disagree.

"The payment of supplementary benefits shall be the responsibility of the employer." Minn.Stat. § 176.132, subd. 3 (1984). But subdivision 3 goes on to say, "The employer or insurer * * * shall have the right of full reimbursement from the special compensation fund for the amount of such benefits paid." *Id.* While International Harvester latches onto the statutory language that payment of supplementary benefits is the "responsibility" of the employer, the fact is that these are only "pass through" payments, for which the employer is reimbursed by the Special Compensation Fund. It is difficult to see how supplementary benefits, in the final analysis, can be considered the employer's ultimate liability. Here, for example, although Clark paid $22,601.12 in supplementary benefits to the employee as of the date of the tort judgment, it has been paid back by the Special Compensation Fund.

■ Even so, argues International Harvester, the Special Compensation Fund should be viewed as an excess insurer that indemnifies the employer on its "primary" obligation to pay supplementary benefits, and, therefore, these payments should be considered as part of the employer's "total workers' compensation liability" under *Lambertson.* We think the employer's role is not that of a primary obligor for payment of supplementary benefits but simply that of a conduit for payments. More importantly, the Special Compensation Fund is not the "excess insurer" of the employer. The Special Compensation Fund, it is true, is funded by employers and their insurers, but this funding is based on a percentage of all workers' compensation benefits paid to injured employees. Minn. Stat. § 176.131, subd. 10 (1982), repealed by 1983 Minn.Laws ch. 290, § 173 (effective January 1, 1984); Minn.Stat. § 176.129

(1984). There is no immediate correlation between an employer's liability to fund supplementary benefits and the amount of these benefits which any given employee receives. The employer's only liability is in the form of a "general" assessment. The Special Compensation Fund "is not the employer's indemnitor for compensation paid, nor does [it] insure employer against compensation claims. [It] affords no protection to any individual employer. [It] represents all employers within the act as a general class." *Orth v. Shiely Petter Crushed Stone Co.,* 253 Minn. 142, 149–50, 91 N.W.2d 463, 469 (1958). We might add that the connection between the employer's fault and the payment of supplementary benefits out of the Special Compensation Fund is too tenuous to justify including supplementary benefits in any contribution claim.

While supplementary benefits are part of the total overall liability of the workers' compensation system, as a system, they are not a direct part of any individual employer's total workers' compensation liability to a particular employee, and, consequently, supplementary benefits are not to be included in a *Lambertson* contribution claim.

III.

The third certified question is whether, under the facts of this case, the government disability benefit offset of Minn.Stat. § 176.101, subd. 4 (1971), applies against the payment of total disability workers' compensation benefits in the absence of a finding that the total disability is permanent. We answer this question yes.

Wilken has been receiving social security disability benefits of $83.51 a week since June 12, 1977. Section 176.101, subd. 4 (1971), dealing with permanent total disability compensation, says, in part:

This compensation shall be paid during the permanent total disability of the injured employee but after a total of $25,-000 of weekly compensation has been paid, the amount of the weekly compensation benefits being paid by the employer shall be reduced by the amount of any

disability benefits being paid by any government disability benefit program * * *.

International Harvester claims that Clark Transport improperly invoked this government disability offset, thereby impermissibly reducing its workers' compensation liability and hence reducing the amount of International Harvester's contribution claim. Employee Wilken has been totally disabled since his injury in 1972 and has received 312.6 weeks of temporary total disability benefits at $80 a week, totalling $25,000. Ordinarily, Wilken would be eligible for temporary total disability benefits for 350 weeks. Minn.Stat. § 176.101, subd. 2 (1971) (subsequently amended). But Clark Transport discontinued payment at 312.6 weeks, 37.4 weeks short of the maximum period, on August 31, 1978, because it claimed its payments had reached the $25,000 threshold under the statute above quoted for invoking the government disability benefit offset.

International Harvester contends that Clark Transport improperly invoked the offset at the end of 312.6 weeks, and that Clark should have continued temporary total disability benefit payments for 350 weeks, thus paying a total of $28,000. This would increase International Harvester's contribution claim by $3,000.

International Harvester relies on *McClish v. Pan-O-Gold Baking Co.*, 336 N.W.2d 538 (Minn.1983), where we did say that only *permanent* total disability benefit payments could count toward the $25,000 threshold for invoking the government disability benefit offset of section 176.101, subd. 4. International Harvester says there has never been a determination that Wilken's total disability is permanent and, therefore, that Clark cannot avail itself of the *permanent* total disability offset to reduce or terminate the payment of *temporary* total disability benefits. Clark Transport argues that reliance on *McClish* is misplaced. It argues that in the context of this case, it is enough that the employee has permanent total disability in fact. Clark argues that it should be unnecessary to require a formal adjudication to put the label of permanency on its compensation payments to the employee.

■ We think Clark Transport has the better of the argument. The parties have stipulated that Wilken has been continuously and totally disabled since his injury, over 9 years ago. The employer, in taking the offset, made a determination that this disability was permanent. Neither the employee nor the Special Compensation Fund has objected. The issue now arises before the district court, which is determining the amount of "total workers' compensation liability" for the purpose of entering a *Lambertson* contribution judgment as part of a tort action against the third party tortfeasor. In this context, it is enough for the trial court to determine, on the record available before it, if the employer's use of the government disability offset was proper. In the circumstances presented here, we believe that to require a separate workers' compensation proceeding to determine whether the total disability is permanent in nature would be an unnecessary and idle exercise.

### IV.

In attempting to restore some balance between the competing interests of the tortfeasor and the employer, we acknowledged in *Lambertson,* and we again here recognize, that our remedy is imperfect. It is worth remembering, however, that the tortfeasor's contribution claim remains a limited claim, and that while the employer's "secondary interest" in receiving credit and reimbursement may be curtailed, the employer's "primary interest" in limiting its obligations to the workers' compensation schedule remains protected. We should not lose sight that *Lambertson* contribution liability only comes into play when a tortfeasor is sued, and then only if the employer is also found at fault.

Certified questions answered.