**UNITED STEELWORKERS OF AMERICA, LOCAL 6115, Respondent,**

**Special Compensation Fund of the Department of Labor and Industry, Respondent,**

v.

**QUADNA MOUNTAIN CORPORATION, et al., Appellants.**

**No. C6–87–1791.**

Supreme Court of Minnesota.

Feb. 5, 1988.

Mark A. Kleinschmidt, Minneapolis, for appellants.

Thomas W. Wexler, Minneapolis, for United Steelworkers of America.

William R. Howard, St. Paul, for Special Compensation Fund.

SIMONETT, Justice.

May an employer bring a subrogation action against a third-party tortfeasor where the employer, who is uninsured, has paid no workers' compensation benefits to the injured employee? May the Special Compensation Fund, which has paid the benefits the employer has failed to make, bring a subrogation action against the third party? These two questions come to us certified by the trial court. We answer the first question yes and the second question (based on 1978 law) no.

Axel G. Larson was injured in a two-vehicle accident in August 1978. He sued the owner of the other vehicle, Quadna Mountain Corporation, and he also filed for workers' compensation. There were serious questions of primary liability in the workers' compensation case concerning who Larson's employer was (the mining company or the union local) and whether the accident happened in the course of employment. In November 1979, Larson settled his personal injury claim against Quadna for $365,000, giving Quadna a full and final release. At this time, the workers' compensation proceeding was still pending and in its early stages.

During the spring and summer of 1980, in a series of three decisions, the compensation judge ruled that Larson, at the time of his accident, was in the employ of United Steelworkers of America, Local 6115 (the Steelworkers); that Larson's accident occurred within the course of his employment; that the Steelworkers pay compensation benefits to Larson; and that, if the employer failed to pay, the Special Compensation Fund would pay. These decisions were appealed by the Steelworkers, but to no avail, ending with summary affirmances by this court in August 1985. The Steelworkers, uninsured for workers' compensation, have been unable to pay Larson's benefits, and the Special Fund has been making the payments.

Sometime after Larson had settled his tort claim with Quadna, the Steelworkers, as plaintiff, commenced this lawsuit against defendant Quadna, claiming they never had notice of Larson's tort settlement, and alleging a subrogation claim for compensation benefits paid and payable. In April 1986, the Steelworkers and the Special Fund entered into a settlement agreement. The Steelworkers agreed at their expense to continue the subrogation lawsuit and to pay the Special Fund two-thirds of any sum recovered, for which, in return, the Special Fund would release the Steelworkers from any and all liability. If no recovery was made, it was agreed that the employer would pay the Special Fund "a sum based upon its then current assets which is reasonable and is mutually agreeable * * *." Finally, the Special Fund agreed to intervene as a party plaintiff in the Steelworkers' lawsuit against Quadna.

In August 1987, defendant Quadna (and its driver, also a defendant) moved for partial summary judgment, asking that plaintiffs' lawsuit be dismissed because neither plaintiff had any right of subrogation.[1] Quadna argued that the Steelworkers had no subrogation rights because it has never paid any compensation benefits, and that the Special Fund had no subrogation rights because the statutes give it none. The trial court ruled both plaintiffs had rights of subrogation against defendant Quadna but certified the questions as important and doubtful.

Before discussing these two questions, we might comment on the employee's "*Lang*-type" settlement with Quadna. We have held in a series of cases that even though the employee makes a full and final settlement with the third party tortfeasor, the employer is not thereby precluded from maintaining its separate statutory subrogation action against the tortfeasor if the employer had no notice of employee's set-

---

1. As a sidelight, in June 1987, the employer settled with Quadna's primary insurer for $135,000, the balance remaining of the policy limits of $500,000 after the primary insurer had paid the Larsons $365,000. As part of this settlement, the primary insurer was released of any further obligation in the lawsuit and employee Larson, who had been impleaded as a third-party defendant, was dismissed from the action. Plaintiffs' subrogation action against Quadna continues, however, with Quadna represented by its excess insurance carrier.

tlement and did not consent to it.[2] In this case, the Steelworkers allege they did not have notice.[3] Quadna disputes this allegation and it remains a fact issue for trial.

■ 1. The first issue is whether the uninsured employer, who has paid no compensation benefits, may nevertheless maintain a subrogation action against the third-party tortfeasor. The answer is yes.

Minn.Stat. § 176.061, subd. 5 (1978), in effect at the time of the accident and hence governing, provides in part,

> If the injured employee or his dependents agree to receive compensation from the employer or institute proceedings to recover the same or accept from the employer any payment on account of such compensation, the employer is subrogated to the rights of the employee or his dependents.

In other words, where, as here, the injured employee institutes workers' compensation proceedings, the "automatic effect" is that the employer is subrogated to the rights of the employee against the third-party tortfeasor. *Wandersee v. Brellenthin Chevrolet Co.*, 258 Minn. 19, 22, 102 N.W.2d 514, 517 (1960). Nothing in the statute limits these subrogation rights to benefits that have been paid; indeed, an employer can sue for benefits yet to be paid in the future. *Aetna Life & Casualty v. Anderson*, 310 N.W.2d at 95. To maintain the subrogation action, there must be either "payment or obligation to pay." *City of Red Wing v. Eichinger*, 163 Minn. 54, 56, 203 N.W. 622, 623 (1925). Here, at the time the Steelworkers commenced their subrogation action, it had not yet been determined the Steelworkers were Larson's employer nor that the injury had occurred in the course of employment. By this time, however, Larson had instituted proceedings against the Steelworkers claiming that the Steelworkers had an obligation to pay him compensation benefits; this was enough to authorize the Steelworkers to commence their subrogation action, it being understood, of course, that continuance of the action would be dependent upon the outcome of the primary liability issues in the compensation proceeding.

Quadna cites *City of Red Wing, supra,* as authority for the proposition that an employer who pays no benefits has no subrogation rights, but this is not quite what that case says. In *Red Wing,* we affirmed the trial court's dismissal of an insured employer's subrogation action on the grounds that because the compensation insurer, not the employer, had paid compensation benefits, the insurer, not the employer, was the real party in interest to bring the subrogation action. *Id.* at 56, 203 N.W. at 623. Although section 176.061, subd. 5, speaks only of the employer's right to make a claim against the third-party tortfeasor, the employer's insurer is subrogated to that claim by virtue of the contract of insurance between the employer and the insurer. *Id.; see also Wandersee,* 258 Minn. at 26–27, 102 N.W.2d at 519–20.

In our case here, unlike *Red Wing,* the employer is uninsured, and, even though

---

**2.** *Lang v. William Bros Boiler & Mfg. Co.,* 250 Minn. 521, 531, 85 N.W.2d 412, 419 (1957); *Paine v. Water Works Supply Co.,* 269 N.W.2d 725, 729 (Minn.1978); *Aetna Life & Casualty v. Anderson,* 310 N.W.2d 91, 95 (Minn.1981). The fact that the employer receives a credit out of the employee's tort recovery against future compensation payable (*see* footnote 3, *infra*) does not preclude the employer from pursuing its subrogation claim against the third party for any other parts of its subrogation interests remaining unsatisfied. *Paine, supra.*

The *Lang*-type settlement is to be distinguished from the *Naig* settlement wherein the employee settles with the third-party tortfeasor for only those items of tort damages not covered by workers' compensation. *Naig v. Bloomington Sanitation,* 258 N.W.2d 891 (Minn.1977).

*See also Haase v. Haase,* 369 N.W.2d 311 (Minn. App.1985); *Easterlin v. State,* 330 N.W.2d 704 (Minn.1983).

**3.** After the settlement was made, the Steelworkers did appear at the district court hearing to allocate the $365,000 settlement amount between Larson and his wife. The district court allocated $125,000 to the wife's consortium claim, and from the remaining balance Larson's employer was given, pursuant to Minn.Stat. § 176.061, subd. 6, a credit of $105,388.32 against compensation payable. Apparently this credit was exhausted by September 1984, and the Special Fund has been making payments since. The total actual and projected cost of Larson's workers' compensation claim is $1.2 million.

someone else (the Special Fund) has paid on its behalf, the employer remains a real party in interest to recover these payments from the third-party tortfeasor. This is because, as between the employer and the Special Fund, the employer remains liable for the compensation payments. An insurance company cannot recover from its insured for loss payments it has agreed, for a premium, to pay on behalf of its insured; but unlike the private insurer, the Special Fund is expressly entitled to reimbursement from the employer for sums paid on the employer's behalf. Minn.Stat. § 176.183 (1978). As a practical matter, any net sum the Steelworkers may recover from Quadna will have to be paid over to the Special Fund. The settlement agreement between the Steelworkers and the Special Fund is simply a prudent recognition of this practical reality and does not make the Steelworkers any less the real party in interest in the lawsuit against Quadna. The Steelworkers, with very modest financial resources, understandauly desire to resolve or at least limit their liability to the Special Fund. Significantly, if no money is recovered from Quadna, the parties have agreed that the Steelworkers' liability to the Fund continues. We hold that the Steelworkers' obligation to pay compensation benefits entitles them under the statute to subrogation rights.

■ 2. The second question is whether the Special Compensation Fund may also maintain a subrogation action against the third-party tortfeasor. We conclude it may not.

As we have already indicated, Minn.Stat. § 176.183, subd. 1 (1978), gives the Special Fund "a cause of action *against such employer* for reimbursement for all moneys paid out or to be paid out." (Emphasis added.) Significantly, the statute does not go further to give the Special Fund a right to sue the third-party tortfeasor also. The Special Fund argues that we should "infer" such a right. It argues that it makes compensation payments to the injured employee on behalf of the employer, the same as a workers' compensation insurer does, and, therefore, it should have subrogation

rights the same as the compensation insurer. Rather than have the employer sue the tortfeasor and then pay over the recovery to the Fund, it makes more sense, argues the Special Fund, to let it sue directly.

The arguments of the Special Fund are not without merit, but we think the law to the contrary is too well settled to be disturbed now. In 1958, in *Orth v. Shiely Petter Crushed Stone Co.,* 253 Minn. 142, 91 N.W.2d 463 (1958), this court stated the Workers' Compensation Act, being of statutory rather than common law origin, was to be strictly construed in determining rights of action; and we held that the Special Fund had no subrogation rights against a third-party tortfeasor because no provision for this subrogation was given in the statute. More recently, in *Dahlbeck v. New London Concrete,* 400 N.W.2d 736 (Minn.1987), we held that the Special Fund could not be reimbursed out of the employee's third-party tort recovery for supplementary benefits it had paid through the employer to the employee. "When legislation fails to authorize subrogation," we said, citing *Orth,* "courts may not infer such a right." *Id.* at 738. *See also Wilken v. International Harvester Co.,* 363 N.W. 2d 763 (Minn.1985).

While the Special Fund likens its role to that of a private insurance carrier, there are, as we have frequently pointed out, distinct differences. *See Orth, Wilken,* and *Dahlbeck.* The Special Fund pays benefits to the injured employee because it is mandated to do so by statute, and the funding for this mandate by employers and insurers "is based on a percentage of all workers' compensation benefits paid to injured employees." *Wilken,* 363 N.W.2d at 769. The private compensation insurer is subrogated to the statutory subrogation rights of the employer because of its contract with the employer. But as between the Special Fund and the employer, there is no contract, only the statutory mandate, for which the legislature did not see fit to include third-party subrogation rights. Neither *Zak v. Gypsy,* 279 N.W.2d 60, 65 (Minn.1979), nor *St. Martin v. KLA Enterprises, Inc.,* 269 N.W.2d 59 (Minn.1978), are of any help to the Fund's position. The

court's discussion of a "right of subrogation" in *St. Martin* referred to the Fund's right to seek reimbursement from the employer.

Finally, we note the legislature in 1981 amended the law to give the Special Fund, as well as the employer, a right of subrogation against third-party tortfeasors. 1981 Minn. Laws ch. 346, § 64. This amendment comes too late, of course, to help the Special Fund in this case. The trial court's grant of subrogation to the Special Fund must be reversed.

Questions answered.