Timothy A. SUNDBY, Respondent,

v.

CITY OF ST. PETER, Self–Insured, adm'd by Berkley Risk Administrators Co., Respondents,

Rolco, Inc., and State Fund Mutual Insurance Co., Respondents,

and

Special Compensation Fund, Relator.

No. A04–1047.

Supreme Court of Minnesota.

March 17, 2005.

Mike Hatch, Attorney General, State of Minnesota, Rory H. Foley, Assistant Attorney General, St. Paul, MN, for Relator.

Jerold M. Lucas, MacKenzie & Gustafson, Ltd, St. Peter, MN, for Respondent Sundby.

Richard Riemer, Erstad & Riemer, P.A., Minneapolis, MN, for Respondent City of Saint Peter.

Andrew W. Lynn, Lynn, Scharfenberg & Associates, Minneapolis, MN, for Respondent Rolco, Inc.

## OPINION

PAUL H. ANDERSON, Justice.

We review on certiorari a decision of the Workers' Compensation Court of Appeals (WCCA) affirming a workers' compensation judge's determination that, under Minn.Stat. § 176.101, subd. 4 (2004), Social Security Disability Insurance (SSDI) child's benefits are to be included when calculating the amount of reduction in an employer's payment of workers' compensation benefits. We conclude that SSDI child's benefits are includable in the calculation to reduce payments; therefore, we affirm.

The parties stipulated to the underlying facts. On December 31, 1986, Timothy Sundby sustained a lower back injury and a left foot fracture while employed by the City of Saint Peter as an apprentice line-

man. As a result of the injuries, Sundby underwent multiple surgeries, including fusion of part of his spine. The City of Saint Peter accepted liability for the injury and paid medical expenses, wage-loss benefits, and economic recovery compensation.

On June 27, 1992, while employed as a maintenance person by Rolco, Inc., Sundby sustained further injury to his lower back, which required additional surgery. Rolco and its workers' compensation insurer, State Fund Mutual Insurance Company, accepted liability and paid workers' compensation benefits to Sundby. Following the 1992 injury, State Fund Mutual paid Sundby temporary total disability benefits and the City of Saint Peter continued to pay temporary partial disability benefits pursuant to *Kirchner v. County of Anoka*, 410 N.W.2d 825 (Minn.1987).[1] As of November 9, 1993, Sundby had received a total of $25,000 in weekly disability benefits from State Fund Mutual and the City of Saint Peter, collectively.

In addition to workers' compensation benefits, Sundby also sought disability benefits under the Social Security Act. By Notice of Award dated July 12, 1999, Sundby was awarded SSDI benefits effective June 1, 1993. The initial amount of Sundby's SSDI benefits was $619.10 per month.

At the time of his injuries, Sundby was financially responsible for three children and, after his divorce, he had ongoing child support obligations for the children when they were not in his custody. Therefore, as a consequence of his disability, Sundby was awarded SSDI child's benefits for his children at a rate of 50 percent of his monthly SSDI benefit rate, or an initial monthly amount of $309.55. Effective December 1, 2002, Sundby received an SSDI monthly benefit of $807.70 and a child's benefit for his one remaining minor child in the amount of $403.80. As this child's benefit accrued, it was paid through Sundby into a direct deposit account in the minor child's name. Under the Social Security Act, 42 U.S.C. § 424a(a)(5) (2000), Sundby's SSDI benefit and the child's SSDI benefit that Sundby received were subject to reduction because of Sundby's concurrent receipt of workers' compensation temporary total and temporary partial disability benefits.

Sundby subsequently sought permanent total disability and supplementary workers' compensation benefits, and the City of Saint Peter, Rolco, and State Fund Mutual sought reimbursement from the Special Compensation Fund (Fund) for any supplementary benefits that were due. The parties, all represented by counsel, negotiated a stipulation of settlement by which they agreed that (1) Sundby was permanently totally disabled as of October 21, 1992; (2) all weekly workers' compensation benefits previously paid were to be deemed permanent total disability benefits; and (3) these workers' compensation benefits could be reduced by the amount of any social security disability benefits. The parties agreed that the 208–week threshold for supplementary benefits was reached on December 31, 1990. The parties also agreed that, as a result of the reclassification, permanent total disability

---

**1.** In *Kirchner*, 410 N.W.2d at 828–29, we held that an employee, whose first compensable injury results in an award of temporary partial disability benefits and who sustains a second compensable injury, receives temporary partial benefits calculated on the wage basis for the first injury as well as temporary total disability benefits calculated on the lower wage basis for the second injury. But we also held that the combined temporary partial disability and temporary total disability benefits cannot exceed the statutory maximum for the second-injury temporary total disability benefits.

benefits in the amount of $25,000 had been paid as of November 9, 1993.

The reclassification of Sundby's weekly workers' compensation disability benefits from temporary to permanent benefits resulted in an overpayment of workers' compensation benefits and it was agreed that the overpayment should be taken out of Sundby's retroactive award of SSDI benefits. But the parties disputed whether the SSDI child's benefits were includable in the workers' compensation government benefits offset provision under Minn.Stat. § 176.101, subd. 4. They ultimately agreed to reserve this issue for a hearing. If the SSDI child's benefits are not included when determining the amount of Sundby's workers' compensation government benefits offset, the overpayment to Sundby is $32,008.51; but, if the child's benefits are included, the overpayment is $47,158.33. The settlement stipulation was approved, and an award was issued on October 2, 2001.

A workers' compensation judge heard the dispute over the inclusion or exclusion of the SSDI child's benefits in the workers' compensation offset on September 30, 2003. The judge determined that the offset provision under Minn.Stat. § 176.101, subd. 4, included all government benefits, including SSDI child's benefits. The judge's decision had a direct effect on the amount of the employee's benefits that were payable by the Fund. Payment of supplementary benefits is the responsibility of the employer or insurer, but the employer or insurer has the right to full reimbursement from the Fund. Minn.Stat. § 176.132, subd. 3 (1994) (repealed 1995).[2] The amount of supplementary benefits depends on the amount of the offset. Moreover, because Sundby became eligible for supplemental benefits on December 31, 1990, the inclusion or exclusion of SSDI child's benefits in the offset determines the amount of reimbursement owed to the Fund. The larger the amount of social security benefits, the larger the offset will be. A larger offset increases the portion of the employee's weekly payment that is the ultimate liability of the Fund.[3] Consequently, if the offset includes both Sundby's SSDI and the child's SSDI, the amount of supplementary benefits, and therefore the Fund's liability, is greater

2. The repeal of Minn.Stat. § 176.132, subd. 3, has no express effective date, so by operation of law it became effective August 1, 1995. Minn.Stat. § 645.02 (2004). Ultimate liability for supplementary benefits is imposed on the Special Compensation Fund, and the Fund has taken the position that the repeal of supplementary benefits is not retroactive and it reimburses supplementary benefits for injuries occurring before October 1, 1995. *Minnesota Workers' Compensation Deskbook* § 13.4, at 13–9 (Jay T. Hartman & Thomas D. Mottaz eds., 2d ed.1997).

3. Minnesota Statutes § 176.132 granted an injured employee supplementary workers' compensation benefits in addition to temporary total or permanent total disability benefits once the employee had received 208 weeks of wage-loss benefits. Supplementary benefits were paid by the employer, with a right of reimbursement from the Special Compensation Fund, to certain recipients of permanent total or temporary total compensation as an additional benefit to bring the total weekly benefit to 65 percent of the statewide average weekly wage. Supplementary benefits were available to those injured workers whose compensation rate on the date of injury was less than 65 percent of the statewide average weekly wage (including annual escalations of the rate pursuant to Minn.Stat. § 176.645 (2004)) or whose rates fell below that level because of government disability benefits offsets. *Wilken v. Int'l Harvester Co.*, 363 N.W.2d 763, 768 (Minn.1985). In 1995, the supplementary benefits provision was repealed, and Minn.Stat. § 176.101, subd. 4, was amended to establish the minimum permanent total rate at 65 percent of the statewide average weekly wage. Act of May 25, 1995, ch. 231, art. 1, § 20, and art. 2, § 110, 1995 Minn. Laws 1990, 2072.

than it would be if only Sundby's SSDI is included in the calculation.

On appeal, the WCCA affirmed. *Sundby v. City of Saint Peter*, 2004 WL 1195639, at \*7 (Minn. WCCA May 10, 2004). In affirming the inclusion of SSDI child's benefits in the offset calculation, the WCCA concluded that the state and federal offset provisions are effectively reciprocal and are aimed primarily at avoiding the duplication of wage-loss benefits. The WCCA said:

> The purpose of the offset provision of Minn.Stat. § 176.101, subd. 4, is to reduce the duplication of benefits between the Social Security system and workers' compensation. *Kloss v. E. & H. Earthmovers*, 472 N.W.2d 109, 44 W.C.D. 530 (Minn.1991). Both SSDI and child's insurance benefits are for the purpose of replacing to the family the wage loss caused by the disability of a parent. Minn.Stat. § 176.101, subd. 4, as originally enacted, allowed an offset of permanent total disability benefits only against Old Age and Survivors Insurance benefits paid to the employee. As amended, the statute broadened the categories of benefits against which the offset may be taken and eliminated the requirement that the Social Security benefit be paid to the disabled employee. Clearly, the legislative intent in amending the statute was to broaden the offset statute. We conclude a child's insurance benefit payable solely because a child's

parent is entitled to SSDI benefits is based on the same considerations as are workers' compensation benefits paid to the employee.

*Sundby*, 2004 WL 1195639, at \*7.

The Fund sought certiorari review under Minn.Stat. § 176.471 (2004).

## I.

■ We will not disturb a WCCA decision "unless it is manifestly contrary to the evidence," but we are not bound to follow the WCCA's conclusions of law. *Bradley v. Vic's Welding*, 405 N.W.2d 243, 245 (Minn.1987).

Minnesota Statutes § 176.101, subd. 4, provides that permanent total disability benefits are payable to the injured employee at a compensation rate of 66–2/3 percent of the employee's daily wage at the time of injury, subject to maximum and minimum compensation rates. When permanent total disability compensation is payable, the employer pays the weekly benefits until they have paid a total of $25,000 in wage-loss benefits. *Id.* After the employer has paid $25,000 in benefits, the employer's amount of workers' compensation benefits is reduced "by the amount of any disability benefits being paid by any government disability benefit program if the disability benefits are occasioned by the same injury or injuries which give rise to payments under this subdivision." *Id.*[4]

---

**4.** Minnesota Statutes § 176.101, subd. 4, provides in relevant part:

> For permanent total disability, as defined in subdivision 5, the compensation shall be 66–2/3 percent of the daily wage at the time of the injury, subject to a maximum weekly compensation equal to the maximum weekly compensation for a temporary total disability and a minimum weekly compensation equal to 65 percent of the statewide average weekly wage. This compensation shall be paid during the permanent total

disability of the injured employee but after a total of $25,000 of weekly compensation has been paid, the amount of the weekly compensation benefits being paid by the employer shall be reduced by the amount of any disability benefits being paid by any government disability benefit program if the disability benefits are occasioned by the same injury or injuries which give rise to payments under this subdivision. This reduction shall also apply to any old age and survivor insurance benefits.

▮ Only permanent total disability compensation may be credited toward the $25,000 threshold. *McClish v. Pan–O–Gold Baking Co.*, 336 N.W.2d 538, 544 (Minn.1983). Consequently, if an initial finding of temporary total disability is superseded by a subsequent finding of permanent total disability, the temporary total disability benefits already paid will be reclassified as permanent total disability payments and will count toward the $25,000 threshold. *Id.* at 542 n. 4. Temporary total benefits can be reclassified as permanent total disability benefits by stipulation of the parties. *Wilken v. Int'l Harvester Co.*, 363 N.W.2d 763, 770 (Minn. 1985). As previously noted, Sundby's temporary total disability benefits were reclassified as permanent total disability benefits.

For a time, Minn.Stat. § 176.101, subd. 4, only reduced the employee's workers' compensation payments based on any social security old age and survivor benefits the employee received. Social security disability benefits could not be used as part of the offset. *Telle v. Northfield Iron Co.*, 278 Minn. 129, 132, 153 N.W.2d 270, 272 (1967) (holding that credit for social security old age and survivor benefits does not also include credit for federal disability benefits). In 1967, the statute was amended to include any government disability benefits in the offset. Act of June 2, 1967, ch. 40, § 9, 1967 Minn. Laws Extra Sess. 2234–35, 2238 (currently codified at Minn. Stat. § 176.101, subd. 4 (2004)). Disability benefits are included in this offset. *See Wilken*, 363 N.W.2d at 768 (allowing employer to take offset for SSDI benefits under the amended statute).

As explained by Professor Arthur Larson, workers' compensation is part of an overall system of wage-loss protection, and offset provisions simply are a means of coordinating benefits. 9 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 157.01 (2003). Professor Larson states:

> Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a worker undergoes a period of wage loss due to all three conditions, it does not follow that he or she should receive three sets of benefits simultaneously and thereby recover more than his or her actual wage. The worker is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. This conclusion is inevitable once it is recognized that workers' compensation, unemployment, nonoccupational sickness and disability insurance, and old age and survivors' insurance are all parts of a system based upon a common principle.

*Id.* at 157–2–3.

Certain provisions of the Social Security Act confirm that workers' compensation wage-loss protection is part of a coordinated benefits system. These provisions require that SSDI benefits for any month be reduced to the point at which the combined social security and periodic workers' compensation benefits do not exceed 80 percent of the individual's average current earnings.[5] 42 U.S.C. § 424a(a)(5) (2000).

---

5.  42 U.S.C. § 424a(a) defines "average current earnings" as follows:

     [A]n individual's average current earnings means the largest of (A) the average month-

ly wage * * * used for purposes of computing his benefits under section 423 of this title, (B) one-sixtieth of the total of his wages and self-employment income * * *

The social security offset includes the claimant's disability benefits as well as any auxiliary benefits payable on the same social security account. 42 U.S.C. § 424a(a) (providing that if a claimant is entitled to workers' compensation, the total of his benefits under section 423 and any benefits under section 402 shall be reduced). SSDI child's benefits, payable under section 402, are therefore subject to the social security offset. *See* 42 U.S.C. § 402(d) (child's benefits).

The SSDI child's benefit is payable until the eligible child has attained the age of 18, or 19 if the child is a full-time elementary or secondary school student. 42 U.S.C. § 402(d)(1)(B) (2000). Generally, if a child is under the age of 18, benefits are paid to a representative payee. 20 C.F.R. § 404.2010(b) (2004). In selecting a representative payee for a child under age 18, first preference is given to the natural or adoptive parent. 20 C.F.R. § 404.2021. The representative payee has the responsibility to use the benefits "only for the use and benefit of the [child] beneficiary in a manner and for the purposes he or she determines, under the guidelines in this subpart." 20 C.F.R. § 404.2035. Benefits certified to a representative payee are to be used for the child's current maintenance, which includes costs "incurred in obtaining food, shelter, clothing, medical care, and personal comfort items." 20 C.F.R. § 404.2040(a)(1).

As previously indicated, Social Security Act disability benefits are reduced by other benefits received by both the claimant and the child. 20 C.F.R. § 404.408(c) (providing that the total of monthly benefits payable under the Act is reduced by the other public benefits payable for that month). The offset is applied first to the total family benefit and then to the claimant's disability benefits. 20 C.F.R. § 404.408(h); 1 Barbara Samuels, *Social Security Disability Claims: Practice and Procedure* § 9:36 at 9–40 (2d ed. 1994) ("The offset or reduction in [SSDI] is applied to dependents first and then to the benefits due the worker individually.").[6]

for five consecutive calendar years after 1950, * * * or (C) one-twelfth of the total of his wages and self-employment income * * * for the calendar year in which he had the highest such wages and income during the period consisting of the calendar year in which he became disabled * * * and the five years preceding that year.

6. 20 C.F.R. § 404.408(h)(2) explains the priorities involved in the reduction of benefits based on disability on account of receipt of state disability benefits:

Whenever a reduction in the total of benefits for any month based on an individual's earnings record is made under paragraph (a) of this section, each benefit, except the disability insurance benefit, is first proportionately decreased. Any excess reduction over the sum of all the benefits, other than the disability insurance benefit, is then applied to the disability insurance benefit.

*Example 1:* Effective September 1981, Harold is entitled to a monthly disability primary insurance amount of $507.90 and a monthly public disability benefit of $410.00 from the State. Eighty percent of Harold's average current earnings is $800.00. Because this amount ($800.00) is higher than Harold's disability insurance benefit ($507.90), we subtract Harold's monthly public disability benefit ($410.00) from eighty percent of his average current earnings ($800.00). This leaves Harold a reduced monthly disability benefit of $390.00.

*Example 2:* In September 1981, Tom is entitled to a monthly disability primary insurance amount of $559.30. His wife and two children are also entitled to monthly benefits of $93.20 each. The total family benefit is $838.90. Tom is also receiving a monthly workers' compensation benefit of $500.00 from the State. Eighty percent of Tom's average current earnings is $820.10. Because the total family benefit ($838.90) is higher than 80 percent of the average current earnings ($820.10), we subtract the monthly workers' compensation benefit ($500.00) from the total family benefit ($838.90), leaving $338.90 payable. This

There is, however, a reverse offset exception to the operation of section 424a. This exception comes into effect if, before February 19, 1981, a state workers' compensation law or plan provided for a reduction in workers' compensation benefits because of SSDI benefits. 42 U.S.C. § 424a(d). Seventeen jurisdictions, including Minnesota and the District of Columbia, qualify for this reverse offset exception. Larson & Larson, *supra* § 157.03(5)(a) at 157–18.

Sundby had child support obligations which were subject to a statutory offset by child's SSDI benefits.[7] While Sundby was receiving temporary total disability benefits, the SSDI benefits paid to Sundby and child's benefits paid on behalf of his children were reduced by Sundby's workers' compensation wage-loss benefits. Following the settlement and reclassification of Sundby's workers' compensation benefits from temporary total disability benefits to permanent total disability benefits, the Social Security Administration awarded retroactive full SSDI claimant's and child's benefits. Concluding that the state and federal offsets were reciprocal, the WCCA determined that the SSDI child's benefits were includable in the calculation of the amount of the reduction in Sundby's workers' compensation benefits.

In support of its position that the child's SSDI benefits are not includable in the calculation of the reduction of workers' compensation benefits, the Fund makes three main arguments. First, it asserts that inclusion of SSDI child's benefits in the workers' compensation offset calculation is contrary to the approach we outlined in *Potucek v. City of Warren*, 535 N.W.2d 333, 336 (Minn.1995). *Potucek* involved application of section 176.101, subd. 4's offset provision in the context of state pension and disability systems. In *Potucek*, the injured employee's work-related disability also made the employee eligible for Public Employees Retirement Association (PERA) disability pension benefits. *Id.* at 334. Under his PERA disability plan, the employee had the option of choosing either a higher monthly payment under a single life annuity plan or a lower monthly payment under a joint and survivor annuity plan. *Id.* at 334–35. The employee elected to receive the lower monthly benefit under the joint and survivor annuity plan. *Id.* After the employee made this election, his employer sought to reduce the employee's permanent total disability benefits based on the higher monthly benefit payable under the employee's single life annuity plan on the ground that the employee could have elected to receive this higher amount. *Id.*

We conclude that *Potucek* is not controlling here. In *Potucek*, we expressly stated that we were addressing the "entirely different" circumstances between workers' compensation programs and retirement programs. *Id.* at 336. We held that the offset for retirement benefits was confined to the amount of benefits actually disbursed, stating that, while Minn.Stat. § 176.101, subd. 4, "furnishes an offset for government benefits being paid, we see nothing in that provision that justifies calculating the amount of the offset for government benefits on an actuarial basis rather than the amount of government

means the monthly benefits to Tom's wife and children are reduced to zero, and Tom's monthly disability benefit is reduced to $338.90.

**7.** Under Minn.Stat. § 518.551, subd. 5(1) (2004),

In establishing or modifying child support, if a child receives a child's insurance benefit under United States Code, title 42, section 402, because the obligor is entitled to old age or disability insurance benefits, the amount of support ordered shall be offset by the amount of the child's benefit.

benefits actually being paid." *Potucek,* 535 N.W.2d at 336. We explained:

> In recognition that workers' compensation is but one element of a system of wage-loss protection, the Minnesota legislature early on provided a means for coordinating workers' compensation with the federal social security system and the state pension system. At the same time, it must be remembered that workers' compensation and retirement programs are based upon entirely different considerations so that offsets aimed at preventing duplicate benefits must be read with the basic purposes of each system in mind.

*Id.* (footnote omitted). We also noted that "an employee ought not be required to subsidize the workers' compensation system by requiring him to forgo a retirement and disability option that the employer is obligated by statute to make available." *Id.*

Second, the Fund argues that inclusion of the SSDI child's benefits in the offset calculation is inconsistent with our prior case law related to coordinating survivor benefits. The Fund cites *Redland v. Nelson's Quality Eggs, Inc.* in support of its argument. 291 N.W.2d 371 (Minn.1980). In *Redland,* we concluded that a widow who received social security "mother's insurance benefits" received no benefits under any government survivor program within the meaning of the state statute. *Id.* at 373. The survivor-offset provision, however, was later amended to specifically include social security mother's insurance benefits in the offset, effectively invalidating the impact of *Redland. Meils, by Meils v. Northwestern Bell Tel. Co.,* 355 N.W.2d 710, 716 (Minn.1984) (noting that amendment was designed to vitiate our holding in *Redland* ). Moreover, unlike beneficiaries' rights applicable in this case, the rights of surviving dependents are separate, inchoate rights. *Owens, by Owens v. Water Gremlin Co.,* 605 N.W.2d 733, 735 (Minn.2000).

Third, the Fund argues that where the offset does not specify the inclusion of SSDI child's benefits in the workers' compensation offset calculation, the offset should be confined to SSDI benefits actually received by Sundby, citing *Kane v. McGough Constr. Co.,* 1998 WL 126882 (Minn. WCCA Mar. 11, 1998); *Bradwell v. U.S. Roof Tech. Corp.,* Findings and Order of Compensation Judge Penny Johnson (Minn.Off.Admin.Hrgs. Apr. 29, 2003); and *Pigman v. Maroney's Serv.,* Findings and Order of Compensation Judge Harold W. Schultz, II (Minn.Off.Admin.Hrgs. Apr. 9, 1999). In *Kane,* the WCCA determined that the offset calculation applied to federal benefits actually being paid, and not to the right to federal benefits. *Kane,* 1998 WL 126882, at *3 (citing *Potucek,* 535 N.W.2d at 336).

In response to this third argument, we note that the cases the Fund cites are decisions by compensation judges. These cases are not binding on our court. Moreover, while the judges in *Bradwell* and *Pigman* declined to include SSDI child's benefits in the workers' compensation offset calculation, other workers' compensation judges have included SSDI child's benefits in the calculation. *See, e.g., Wieland v. Andersen Windows,* Findings and Order of Compensation Judge Rolf G. Hagen (Minn.Off.Admin.Hrgs. Dec. 12, 1996) (concluding that child's benefits are included in offset calculation); *Ihns v. Triad Mfg.,* Findings and Order of Compensation Judge Thomas W. Walsh (Minn.Off.Admin.Hrgs. Nov. 3, 1995) (concluding that child's benefits are included in offset calculation). Therefore, the workers' compensation cases cited by the Fund do not provide compelling support for the Fund's position. Nonetheless, when compared

with other inapposite workers' compensation decisions, they do demonstrate the need for us to address this issue.

While Sundby simultaneously received temporary workers' compensation and SSDI benefits, the federal government was authorized under the Social Security Act to offset or reduce the primary and auxiliary SSDI benefits, with the offset applied to Sundby's total family benefit first and then to his individual benefit. But when Sundby's workers' compensation benefits were reclassified as permanent under section 176.101, subd. 4, his full SSDI benefits were reinstated. At this point, the City of Saint Peter, Rolco, and State Fund Mutual were authorized to reduce Sundby's workers' compensation benefits by the amount of all of his SSDI benefits. *See* Samuels, *supra* § 9:30 at 9–32 (discussing reverse offset under the Social Security Act). Minnesota Statutes § 176.101, subd. 4, expressly states that the "amount of the weekly compensation benefits being paid by the employer shall be reduced by the amount of any disability benefits being paid by any government disability benefit program." As the WCCA concluded, the applicable state and federal offsets are effectively reciprocal, allowing employers and insurers to take advantage of the offset the federal government would otherwise make. *Cf. Stuckey v. Dep't. of Labor & Indus.*, 129 Wash.2d 289, 916 P.2d 399, 405 (1996) (stating that the calculation of a workers' compensation offset includes all social security disability benefits based on the workers' primary insurance amount); *Modern Plating Co. v. Whitton*, 394 So.2d 515, 517 (Fla.Dist.Ct.App.) (holding that the workers' compensation offset includes total social security disability benefits received by claimant and his dependents), *rev. denied*, 402 So.2d 614 (Fla.1981); Samuels, *supra* § 9:29 at 9–30 (stating that the social security offset against workers' compensation benefits includes the claim-

ant's disability benefits plus any auxiliary benefits payable on the same account).

We have said that "offsets aimed at preventing duplicate benefits must be read with the basic purposes of each system in mind." *Potucek*, 535 N.W.2d at 336. Bearing in mind the purposes of the state and federal systems and the reciprocal nature of the offsets, we conclude that the inclusion of SSDI child's benefits in calculating the reduction of state workers' compensation benefits advances the legislature's intent to reduce the state's compensation burden by taking advantage of the workers' compensation government benefits offset to its fullest extent. Accordingly, we hold that SSDI child's benefits are to be included when calculating the amount of the reduction in an employer's payment of workers' compensation benefits under Minn.Stat. § 176.101, subd. 4.

## II.

■■ The Fund makes the argument that the WCCA exceeded its authority in examining the Social Security Act. The WCCA's jurisdiction does not extend to interpreting or applying legislation designed specially for the handling of claims outside the workers' compensation system. *Taft v. Advance United Expressways*, 464 N.W.2d 725, 727 (Minn.1991) (holding that the jurisdiction of the WCCA did not extend to interpreting or applying the law related to claims against the Minnesota Insurance Guaranty Association). In that Minn.Stat. § 176.101, subd. 4, is a means for the coordination of workers compensation with the federal social security system, the WCCA looked to federal law for instruction in ascertaining the appropriate inclusion of SSDI benefits in the workers' compensation benefits offset calculation. We conclude that the WCCA neither construed nor applied federal law and there-

fore the Fund's argument on this point lacks merit.

Affirmed.

ANDERSON, G. BARRY, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.