**Christian TYROLL, Plaintiff,**

v.

**PRIVATE LABEL CHEMICALS, INC., Respondent,**

**Central Machine Works, et al., Plaintiffs in Intervention, Petitioner, Appellants.**

**No. C1–92–479.**

Supreme Court of Minnesota.

Aug. 27, 1993.

Michael D. Carr, Minneapolis, for appellants.

Thomas L. Thompson, St. Louis Park, for respondent.

SIMONETT, Justice.

This appeal raises issues relating to an employer-insurer's subrogation action after the employee has made a pretrial *Naig* settlement. We hold that the defendant tortfeasor is entitled to a jury trial, and we clarify the measure of damages and how the damages are to be determined. We affirm in part and reverse in part the court of appeals' decision, *Tyroll v. Private Label Chemicals, Inc.*, 493 N.W.2d 128 (Minn.App.1992).

Plaintiff-employee Christian Tyroll commenced a negligence suit for injuries sustained on the job against the third-party tortfeasor, defendant Private Label Chemicals, Inc. Plaintiff's employer, Central Machine Works, and its compensation carrier, Northwestern National Insurance Company, having paid the employee some $135,000 in compensation benefits, intervened in the lawsuit.

Shortly before trial, plaintiff entered into a *Naig* settlement with the defendant tortfeasor, leaving only the employer's subrogation claim to be tried. When the subrogation suit was called for trial, the court and counsel engaged in extensive discussions as to how to proceed. At the employer's urging and over the defendant's objections, the trial judge made two key rulings. First, the case would not be submitted to a jury but would be tried to the court. Second, the measure of damages was the total amount of compensation benefits paid or payable. It is evident from the record that the parties and the trial judge were having difficulty deciphering the case law as it then existed in April 1991, and that the judge, by his rulings, was hoping to fashion clear-cut issues for appellate review.

Following a bench trial, the trial court ruled in favor of the employer-insurer. The court found that the defendant tortfeasor was 100 percent at fault for plaintiff's accident; that the employer-insurer had paid $135,810.13 in compensation benefits to and on behalf of the employee; and that this sum was reasonably and necessarily required under the workers' compensation law. Judgment in the amount of $135,810.13 was en-

tered in favor of Northwestern National, the plaintiff in intervention, as the employer's insurer.

The defendant tortfeasor, Private Label Chemicals, did not move for a new trial but instead appealed from the judgment. The court of appeals reversed, holding it was error to deny defendant a jury trial. The appeals panel also ruled the defendant tortfeasor was entitled "to a factual determination on the extent, causation and nature of damages even where there is no claim of unreasonableness [with respect to the compensation benefits paid]." *Tyroll v. Private Label Chemicals, Inc.*, 493 N.W.2d at 132. We granted the employer-insurer's petition for further review on these two issues.

I.

The first issue is whether the defendant tortfeasor was entitled to a jury trial. But before we reach this question, we must decide if the issue was properly preserved for appellate review.

As noted above, defendant Private Label Chemicals failed to make a new trial motion assigning as error the trial court's ruling denying trial by jury. Instead, defendant appealed from the judgment where review is limited to whether the evidence sustains the verdict or the findings of fact and conclusions of law. *See, e.g., Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). This court has consistently held, most recently in *Sauter v. Wasemiller*, 389 N.W.2d 200, 201 (Minn.1986), that "matters such as trial procedure, evidentiary rulings and jury instructions are subject to appellate review only if there has been a motion for a new trial in which such matters have been assigned as error." This rule applies whether trial is to the court or a jury.

While the court of appeals took notice of *Sauter v. Wasemiller*, it said, "Nevertheless, questions of law may be considered on appeal despite the failure to make a motion for a new trial," citing its own decision in *County of Isanti v. Peterson*, 469 N.W.2d 467, 469 (Minn.App.1991). The court of appeals then concluded that the jury issue was a question of law and hence reviewable. This approach,

however, is inconsistent with our well-settled case law.[1] With a little ingenuity, most questions can be converted into so-called "questions of law"; if the exception were to be allowed, it would soon swallow up *Sauter*. Nor would orderly appellate review be served if appealability of an issue degenerated into debates over what was a question of law. We adhere to *Sauter* and the policy reasons therein stated, and contrary decisions of the court of appeals are overruled.

The threshold issue before us, then, is whether *Sauter* bars appellate review of the jury issue because it was never assigned as error in a new trial motion. Put another way, is the right to a jury trial a matter of "trial procedure" which, according to *Sauter*, must be assigned as error in a post-trial motion to the trial court?

 It seems to us the right to a jury trial is *sui generis*. It is a constitutional right, guaranteed by Article 1, section 4 of the Minnesota Constitution, which states, "The right of trial by jury shall remain inviolate * * *." This inviolate right relates not to *how* a case is to be tried before the decisionmaker, but *who* is to be the decisionmaker. In other words, the jury trial is more than a procedural matter; it defines the basic nature of the decisionmaking process itself. We conclude, therefore, that a party who has raised the issue of a jury trial in the trial court can again raise that issue in the appellate court without first assigning it as error in a motion for a new trial.[2]

 We now reach the merits of the issue presented. We agree with the court of appeals that the defendant tortfeasor, Private Label Chemicals, had a right to a jury trial and that it was reversible error to deprive defendant of that right.

 Generally speaking, our state constitution guarantees a jury trial for causes of action recognized as common law actions when our constitution was adopted. *Breimhorst v. Beckman*, 227 Minn. 409, 433, 35 N.W.2d 719, 734 (1949); *Morton Brick & Tile Co. v. Sodergren*, 130 Minn. 252, 254, 153 N.W. 527, 528 (1915). Whether there is a right to a jury trial is determined by "the nature and character of the controversy, determined from all of the pleadings." *Landgraf v. Ellsworth*, 267 Minn. 323, 326, 126 N.W.2d 766, 768 (1964).

Here we have a routine negligence personal injury action. The plaintiff alleges compensable injuries resulting from the defendant's failure to keep a raised platform at its warehouse safe for visitors. These are common law issues triable by jury. The fact that the Workers' Compensation Act gives the employer-insurer the right to intervene and maintain the action as a subrogee does not change the essential "nature and character of the controversy." As will be developed in Part II, certain issues relating to the reasonableness and propriety of the workers' compensation payments do not fit the common law mold, and as to these limited issues, trial is to the court.

---

1. Apparently the court of appeals' "question of law" exception is derived from a misreading of this court's decision in *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 354 (1977), where we said that appellate courts "need not defer to the ultimate conclusions drawn by the trial court" when resolving legal questions. *Durfee*, however, was not concerned with the question of how issues are preserved for appeal. There we were only commenting on the well-established standard of appellate review that a trial court's factual findings are entitled to more deference than its legal conclusions. In other words, our statement in *Durfee* concerned only the degree of scrutiny applied by appellate courts to questions of law and fact once those questions properly reach the appellate court.

 *Durfee* was properly applied by the appeals panel in *Van De Loo v. Van De Loo*, 346 N.W.2d 173, 175 (Minn.App.1984), as authority for an appellate court reviewing a question of law *de novo*. But *Schmidt v. St. Paul Fire & Marine Ins. Co.*, 376 N.W.2d 237 (Minn.App.1985), then incorrectly cited *Van De Loo* for the proposition that it was not necessary to assign error in a new trial motion in order to preserve the error if the claim was on a question of law. *Id.* at 239. *Schmidt* was then cited in *County of Isanti v. Peterson*, 469 N.W.2d 467, 469 (Minn.App.1991), which, in turn, surfaced in this appeal as authority for bypassing *Sauter*.

2. We are not dealing here with the so-called "fundamental error" rule which provides that error not objected to at trial may nevertheless be assigned in a motion for a new trial, but only if "the error in the instructions [was] with respect to fundamental law or controlling principle." Minn.R.Civ.P. 51.

## II.

The trial judge held that the measure of damages for trial of the employer's subrogation claim is the compensation benefits paid and payable. Because this issue will reoccur on retrial, we discuss it here.[3] We hold that benefits paid and payable is not the correct measure of damages or, more precisely, it is an incomplete statement of the measure of damages. Why this is so requires consideration of the nature of the employer's subrogation action, a subject somewhat shrouded in ambiguity.

The employer has an interest, to the extent of its subrogation claim, in the employee's cause of action in tort against the third-party tortfeasor. If the cause of action proceeds to trial and judgment, the sum recovered is distributed in accordance with the subdivision 6 formula.[4] This statutory procedure works well enough, but sometimes plaintiff employees—after evaluating what their net recovery might be under the formula—will choose to settle their interests with a *Naig* settlement.

In *Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977), the employee prior to trial settled with the defendant tortfeasor for only those items of damages not subject to the employer's subrogation rights. We held that the *settlement proceeds* were not subject to the subdivision 6 formula. We said:

> [S]o long as the employee demonstrates that the settlement concerns only damages not recoverable under worker's compensation, or allocates the settlement into recoverable and nonrecoverable claims, the employer cannot credit the nonrecoverable portion of the settlement against compensation payments. By pursuing this course, however, the employee waives his statutory right to one-third of the employer's net recovery from the third-party.

*Id.* at 894. The *Naig* opinion, however, did not elaborate on how the employer's subrogation action was to be maintained.

In 1981, this court decided *Henning v. Wineman*, 306 N.W.2d 550 (Minn.1981). There, prior to trial, the employee and the defendant tortfeasor settled the *entire* tort cause of action. The trial court then allocated half of the settlement to damages not recoverable under workers' compensation and the other half to recoverable damages. We held that the employer's subrogation recovery was to be determined, at the option of the employee, in one of two ways: by applying the subdivision 6 formula to the entire tort recovery; or by applying the subdivision 6 formula to only that part of the settlement allocated to damages recoverable under the Workers' Compensation Act, but with the employee forfeiting his statutory right to one-third of the recovery after collection costs. *Id.* at 552–53.

In 1984, we decided *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899 (Minn. 1984). There the employer brought its subrogation action first, resulting, however, in summary judgment for the defendant tortfeasor. Subsequently the injured employees commenced their personal injury tort action against the defendant tortfeasor. In ruling that not all damage items of the employees' claims were barred by res judicata, we offered a description of those damages *not* included in the employer's subrogation claim:

> Thus, while the [plaintiff] firefighters could assert claims for pain and suffering, loss of earning capacity, loss of consortium, emotional distress and other items not compensable under workers' compensation law, the [employer] city, having no subrogation interest in these non-compensable claims, could not have asserted these claims.

*Id.* at 903.

One year later, we decided *Kempa v. E.W. Coons Co.*, 370 N.W.2d 414 (Minn.1985).

---

**3.** Arguably, the trial court's conclusions of law on damages are not sustainable under its findings of fact (there being no findings on common law damages), so that the damages issue is preserved here for our review, even though this is only an appeal from a judgment.

**4.** Subdivision 6 of Minn.Stat. § 176.061 (1992) allocates the employee's tort recovery roughly as follows: first, payment of attorney fees and costs of about one-third; next, one-third of the remainder free and clear to the employee; next, payment of the employer's subrogation claim less a pro rata share of the attorney fees; and, finally, any balance remaining to the employee, but subject to a credit to the employer for any future benefits payable.

There plaintiff's personal injury action against the defendant tortfeasor went to trial and a verdict, after which the plaintiff and the tortfeasor entered into a *Naig* release, settling for all compensatory and punitive damages over and above the employer's subrogation rights. The trial court then allocated the verdict award between damages "of the kind compensable pursuant to the Workers' Compensation Act" and those not so compensable. We held, however, in this post-trial *Naig*-type settlement, where the employer had actively participated in a long and complex trial, that the employer's subrogation recovery should be determined as if there had not been a settlement; in other words, the subdivision 6 formula should be applied to the total verdict to arrive at the employer's net recovery. *Id.* at 419.

Most recently, in *M.W. Ettinger Transfer v. Schaper Mfg.*, 494 N.W.2d 29 (Minn.1992), there was a pretrial *Naig* settlement. The issue on appeal was whether, in the trial of the remaining subrogation claim, the employer was required to prove "the extent of damages." We rejected the employer's argument (adopted by the trial court)· that it should not have to prove its damages because its damages were the amount of benefits paid and payable. We held that the defendant tortfeasor was entitled to contest the reasonableness of the compensation paid, and, therefore, the employer must prove the nature and extent of its employee's injury in the subrogation action. *Id.* at 34. We added, "[T]raditional tort notions requiring the plaintiff to prove the extent of damages were not eliminated by the Workers' Compensation Act." *Id.* at 33.

We now reach today's case. Here, unlike *Henning* and *Kempa*, we do not know what the employee's tort claim is worth in its entirety, as the claim has not been liquidated in its entirety by verdict or settlement. Instead, like *Ettinger*, we have a pretrial *Naig* settlement with tort damages compensable under workers' compensation as yet undetermined.

Our cases speak of common law tort damages "recoverable" or "not recoverable" under the Workers' Compensation Act. It is not quite clear, however, what this means. In *Kaiser*, mentioned above, we indicated that pain and suffering—and even loss of earning capacity—were items not compensable under workers' compensation. *But see Naig*, 258 N.W.2d at 895 ("pain and suffering * * * might be related to claims for worker's compensation"). The dividing line between recoverable and nonrecoverable items has been further blurred by the 1983 amendments to the Workers' Compensation Act, by the role of pain in determining disability ratings, and by our cases indicating that permanent partial disability is for impairment of function, not wage loss replacement. *See, e.g., Gasper v. Northern Star Co.*, 422 N.W.2d 727, 731 (Minn.1988); *see also* Arthur Larson, *The Wage–Loss Principle in Workers' Compensation*, 6 Wm.Mitchell L.Rev. 501 (1980).

Nevertheless, some line of demarcation is needed if *Naig*-type settlements are to be recognized and allocations made accordingly. Basically, workers' compensation is intended to compensate for loss of income due to inability to work because of a job-related injury (and, of course, for medical expenses). Tort damages, on the other hand, are, in some respects, more expansive, both in kind and amount. We conclude that common law tort damages for past and future wage loss and loss of earning capacity are the kind of damages that should be deemed recoverable under workers' compensation. Common law damages of the kind not recoverable under workers' compensation should, we think, be deemed to include pain and suffering, general disability, embarrassment, disfigurement, and mental anguish. We believe this division for allocation purposes should govern, at least ordinarily.[5]

---

5. Apparently practitioners have been taking much the same approach, at least for allocation purposes. See William M. Bradt & Wilbur W. Fluegel, *Third–Party Practice*, in *The Minnesota Workers' Compensation Deskbook* § 16.11, at 16–17 (Jay T. Hartman & Thomas P. Mottaz eds. 1993), stating that a *Naig* release includes settlement of pain and suffering, emotional distress, and wage loss in excess of benefits paid.

As stated in the text, the employer's subrogation action includes loss of earning capacity. This item of damages, we think, sufficiently overlaps the kind of loss contemplated by workers'

In the employer's subrogation action, the employer steps into the shoes of the employee to continue the unsettled portion of the employee's tort cause of action. While the employer is interested only in recovering for benefits paid and payable, the third party tortfeasor is entitled to defend against this subrogation action as it would any tort cause of action. The workers' compensation system is not intended to "shift the employer's obligations under the employment contract to third parties who are strangers to that contract in complete disregard of * * * the common law measure determinative of the nature and extent of damages recoverable in actions sounding in tort." *Allstate Ins. Co. v. Eagle–Picher Indus., Inc.*, 410 N.W.2d 324, 328 (Minn.1987). Put another way, the defendant tortfeasor is defending against a tort claim, not a workers' compensation claim.

Consequently, while it is correct to say that the ultimate damages recoverable in the employer's subrogation suit are the benefits paid and payable, it is also correct to say that these damages are to be recovered out of the common law tort damages for which the third party tortfeasor is first found responsible. In other words, the determination of damages is a two-step procedure. Indeed, if the subdivision 6 formula is applied to the amount of common law damages recovered in the subrogation suit, we would have a three-step procedure.

There are, we suppose, several methods of handling the employer's subrogation suit after the employee has made a pretrial *Naig* settlement. One option would be to try the lawsuit as if the employee had not entered into a *Naig* settlement. The employer would present evidence bearing on all tort damages, whether or not "recoverable" under workers' compensation. The verdict would then be subjected to the subdivision 6 formula. The one-third statutory share to the employee would be deducted, even though waived by the employee as a result of the *Naig* release.

Presumably, the employer would also recover a proportionate share of attorney fees. If, after payment of benefits, there were any proceeds left, it would seem there would be no one to receive them (the employee cannot take what is left), and the statutory "credit" would lapse. The problem with this method is that the lawsuit is seriously artificial. The employer is asking the jury for damages for the employee's pain and suffering which the employee has already settled. Indeed, it could happen under the formula that the tortfeasor would be paying attorney fees out of damages the tortfeasor has already settled; because the tortfeasor has not consented to this payment, the problem of splitting a cause of action could arise. Finally, on a very practical level, it is troubling that the employee who has no stake in the lawsuit is being asked to take an active interest in proving the employer's case for pain and suffering damages.

Another solution might be to do what the trial judges in this case and *Ettinger* decided to do, namely, make damages a one-step process by making the amount of benefits paid and payable the sole measure of the damages. This approach has the advantage of simplicity, but it confuses the causation issues involved. Tort damages and compensation benefits are awarded an injured person on entirely different rationales and cannot be equated in a common law negligence action.

What is needed is a method that is workable, not unduly complicated, least wasteful of judicial resources, and most consistent with the legal principles involved and the interests of the employee, employer, and third-party defendant tortfeasor. We believe, therefore, that the employer's subrogation action should be limited to recovery of common law damages for past and future wage loss, loss of earning capacity, and similar items of damages, if any.[6] This recovery is not subject to the subdivision 6 formula.

compensation benefits; loss of earning capacity takes into consideration "the age, health, skill, training, experience, and industry of [the plaintiff], whether the loss of future earning capacity is for a limited period of time or is permanent; and whether the number of years of [plaintiff's] earning expectancy is equal to or less than his life expectancy." 4 Minn. Dist. Judges Ass'n, *Minnesota Practice*, JIG 160 (3d ed. 1986).

6. The employer also, of course, will sue for medical expenses under Minn.Stat. § 176.061, subd. 7.

Any such tort damages recovered shall apply to payment of benefits paid and payable and judgment so entered. If the tort damages exceed benefits paid and payable, the excess is moot, deemed settled under the *Naig* release; if less, the employer's ultimate recovery is less by that amount. Because the subdivision 6 formula does not apply, there is no additional recovery for attorney fees and no credit remaining outstanding. The amount of compensation benefits entitled to be recovered out of the common law damages award involves the administration of the Workers' Compensation Act in all its intricacies, and, as such, is a separate matter for the court, not the jury, to determine.

Under this method, comparative fault (when an issue) may diminish or defeat liability for the subrogation claim. There is no *Lambertson* contribution problem because the employer, even if at fault, is not liable to contribute to the sum the tortfeasor paid the employee to settle the "nonrecoverable" damages under the *Naig* release. *See Kempa,* 370 N.W.2d at 419. Also, we might add, when the subrogation claim is limited to "overlapping-type" damages, thereby excluding the more subjective and less predictable damages for pain and suffering, it likely will be easier for trial counsel to evaluate their positions for settlement purposes.

As stated above, the trial court decides the amount of compensation benefits involved. Does the injured employee by entering into a *Naig* release deny the employer its statutory right to obtain a credit against benefits payable? This problem is not as serious as it may first appear. We think *Wilken v. International Harvester Co.*, 363 N.W.2d 763 (Minn.1985), provides the solution. There the employee's own tort lawsuit went to a verdict against the defendant tortfeasor, with the tortfeasor proving fault on the employer so as to establish a *Lambertson* contribution claim. The question presented was how to calculate benefits payable in the future by the employer for the purpose of determining the extent of the tortfeasor's contribution claim. We said the trial judge should determine the amount of benefits payable in the future on the evidence available (using affidavits, depositions, and exhibits) and make reasonable assumptions (such as life expectancy of the injured employee), and then reduce the benefits payable to present value. *Id.* at 767–68. This same procedure can be used here.[7]

Prior to trial of the jury issues, then, the trial court should hold a hearing to determine the amount of benefits paid and payable.[8] It shall be presumed that benefits paid by the employer were reasonable and proper expenditures under the Workers' Compensation Act.[9] Any benefits payable in the future may be liquidated as in *Wilken, supra.* In many cases the parties should be able to stipulate to the amount of the subrogation claim. If not, the trial court decides, making appropriate findings of fact and conclusions of law.

With the amount of the subrogation damages determined, the common law tort action is then tried to the jury. Once the verdict is received on common law damages, judgment is entered against the defendant for the amount of the benefits paid and payable or such part thereof as the jury's award of damages will cover.

■ There will be cases where the defendant tortfeasor will claim that at least part of the compensation benefits were paid because of some other injury or circumstance for which the defendant tortfeasor is not liable. In this case, for example, the tortfeasor

---

7. In this case the employee agreed to settle his claim for future benefits for $26,237.50 (but excluding future medical expense), the settlement to be approved by the workers' compensation division. Apparently the employee was to continue to receive temporary partial benefits of $23 a week until the award on stipulation was issued.

8. The extent to which common law damages overlap compensation benefits paid and payable cannot be expected to be exact. For example, retraining expenses are reasonable and proper payments under the Workers' Compensation Act, and these expenses, related as they are to a restoration of earning capacity, are recoverable in the subrogation action even though there is no comparable item of common law damages.

9. The defendant tortfeasor may argue that certain benefits paid and payable were not reasonable or proper, although this argument may be subject to the restrictions on collateral attacks. This issue is best left, however, to another day.

claims a large part of the benefits paid are attributable to a flare-up of the employee's pre-existing phlebitis, for which it should not be liable. These types of causation issues are resolved in the tort action. The tortfeasor is free to argue to the jury that it is not liable for loss of wages and earning capacity caused by an injury unrelated to the accident involved in the subrogation suit. In the case of pre-existing phlebitis, the parties will argue whether or not the injury aggravated a pre-existing condition, and the extent any aggravation affected earning capacity. In other words, the common law damages will be determined on their common law merits. If, as in *Todalen v. United States Chemical Co.*, 424 N.W.2d 73, 81 (Minn.App.1988), *rev. denied* (Minn., June 29, 1988), the jury awards no damages for loss of earning capacity, the employer simply has no such damages to apply to payment of its subrogation claim. To the extent *Todalen* holds otherwise, it is overruled.

Reversed and remanded for a new trial.

WAHL, J., took no part in the consideration or decision of this case.