Stanley SAYRE II, Appellant,

v.

McGOUGH CONSTRUCTION
CO., INC., Respondent.

No. C6–97–2117.

Court of Appeals of Minnesota.

June 23, 1998.

Review Denied Aug. 18, 1998.

Mitchell R. Spector, Sally M. Spector, Abrams & Spector, P.A., Minneapolis, for appellant.

Neal J. Robinson, Conley Law Office, Minneapolis, for respondent.

Considered and decided by SHUMAKER, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Stanley Sayre II was injured at work through the negligence of respondent McGough Construction Co., Inc. He recovered under the Minnesota Workers' Compensation Act (the Act) and then sued McGough Construction. McGough Construction moved to exclude Sayre's evidence on his claim for loss of earning capacity, arguing that McGough Construction's settlement of the workers' compensation insurer's potential subrogation claims with the workers' compensation insurer precluded Sayre's claim. The district court treated the motion as one for summary judgment on the issue of loss of earning capacity and granted it. We conclude Sayre's claim against McGough Construction for loss of earning capacity is not barred. We reverse.

## FACTS

Sayre is an electrician employed by People's Electric. He was injured at work when a temporary wall erected by McGough Construction fell on him. Sayre recovered medical expenses in the amount of $9,487 and wage loss in the amount of $9,141 under the Act from his employer/insurer. He also brought several claims against McGough Construction, among them a claim for loss of earning capacity.

Prior to trial, McGough Construction entered into a reverse-*Naig* settlement with the workers' compensation insurer for People's

Electric (employer/insurer) whereby McGough Construction paid the employer/insurer $19,500 and the employer/insurer released McGough Construction from any subrogation claims for workers' compensation benefits paid or payable to Sayre.[1] His total claim against McGough Construction for loss of earning capacity is $411,000.

## ISSUE

May a worker injured through the negligence of a third-party tortfeasor pursue a claim against the tortfeasor for damages for loss of earning capacity in an amount over and above those recoverable under the Minnesota Workers' Compensation Act?

## ANALYSIS

■ There is no dispute as to the facts; the issue presented is solely a question of law. When the material facts are not in dispute, a reviewing court need not defer to the trial court's application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

Here, Sayre seeks to recover damages for loss of earning capacity against McGough Construction. He has been reimbursed under the Act for medical expenses and lost wages, but not for loss of earning capacity; however, he is entitled to assert a claim under the Act for part of his loss of earning capacity damages. McGough Construction maintains that any claim for loss of earning capacity lies exclusively against the workers' compensation insurer/employer and that Sayre is therefore prohibited from bringing a loss of earning capacity claim against McGough Construction.

Two preliminary points need to be established. First, the existence of a reverse-*Naig* settlement is not dispositive here. Sayre was not a party to the reverse-*Naig* settlement between the employer/insurer and McGough Construction and therefore cannot be bound by it. Second, Minn.Stat. § 176.101 (1994) enables Sayre to recover only a small portion of his claimed damages for loss of earning capacity under the Act.[2] The question confronting us is simply whether, under Minnesota law, an action for loss of earning capacity damages not recoverable under the Act may lie against a third-party tortfeasor. To answer the question, we examine two cases.

*Kaiser v. Northern States Power Co.*, 353 N.W.2d 899 (Minn.1984), involved injured firefighters who brought an action against a third-party tortfeasor. The court observed that "the firefighters could assert claims for pain and suffering, *loss of earning capacity*, loss of consortium, emotional distress, and other items not compensable under workers' compensation law." *Id.* at 903 (emphasis added). We conclude from *Kaiser* that claims for loss of earning capacity, insofar as they are not compensable under the Act, may be brought by injured workers' against a third-party tortfeasor.

The supreme court continued its discussion of this issue in *Tyroll v. Private Label Chems., Inc.*, 505 N.W.2d 54 (Minn.1993). In *Tyroll*, an employer/insurer intervened in an injured worker's suit against a third-party tortfeasor. *Id.* at 56. The worker then settled with the tortfeasor, leaving only the employer/insurer's subrogation claim against

---

1. *See Naig v. Bloomington Sanitation*, 258 N.W.2d 891, 893–94 (Minn.1977) (holding that injured employee has right to settle with third-party tortfeasor claims not covered by Minnesota Workers' Compensation Act). A reverse-*Naig* settlement occurs when the tortfeasor settles potential subrogation claims for workers' compensation benefits with the employer and the employer's workers' compensation insurer. *See McDonough v. Muska Elec. Co.*, 486 N.W.2d 768, 771 n. 4 (Minn.1992); *see also Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 130, 257 N.W.2d 679, 689 (1977) (holding that third-party tortfeasor has right to contribution from employer up to amount of employer's workers' compensation liability).

2. The parties agree that the statute limits Sayre's recovery to two-thirds of the difference between his pre-injury and his post-injury wage for 225 weeks. As the district court noted:

This result [i.e. denying Sayre's right to pursue his workers' compensation claim against McGough Construction] does not make particular sense to me. The operation of the Act does not provide that an injured worker will necessarily be fully compensated for a loss of earning capacities. The various compensation formulae contained in the Act place limits on the amount of compensation benefits payable under the Act.

the tortfeasor. *Id.* Modifying its statement in *Kaiser*, the court observed:

> Basically, workers' compensation is intended to compensate for loss of income due to inability to work because of a job-related injury (and, of course, for medical expenses). Tort damages, on the other hand, are, in some respects, more expansive, both in kind and amount. We conclude that common law tort damages for past and future wage loss and loss of earning capacity are *the kind of damages that should be deemed recoverable under workers' compensation.* Common law damages of the kind not recoverable under workers' compensation should, we think, be deemed to include pain and suffering, general disability, embarrassment, disfigurement, and mental anguish. We believe this division for allocation purposes should govern, *at least ordinarily.*

*Id.* at 59 (emphasis added). Thus, while *Kaiser* referred to loss of earning capacity as a claim not recoverable under workers' compensation and therefore recoverable from a third-party tortfeasor, *Tyroll* refers to loss of earning capacity as "the kind of damages that should be deemed recoverable under workers' compensation * * * at least ordinarily." *Id.* The interplay of the *Kaiser* reference and the *Tyroll* reference, together with the "at least ordinarily" language qualifying the *Tyroll* reference, demonstrates that the relationship between loss of earning capacity damages and workers' compensation has not been definitively resolved. We conclude that the question whether an injured employee may recover any loss of earning capacity damages from a third-party tortfeasor has not been answered.

■ The decisive factor, in our view, is the party from whom the damages are being sought. Basically, workers' compensation is intended to compensate an injured worker for loss of income and medical expenses, regardless of fault. *See* Minn.Stat. § 176.001 (1996). We have no disagreement with this basic tenet of workers' compensation. In exchange for receiving the benefits of workers' compensation, however, the injured worker may have to compromise his or her claim in that he or she may not be fully compensated for all of his or her damages. This may be appropriate so long as the parties involved are those to whom the Act applies, i.e., the employer and the employee. But when recovery is sought from a third party, we must look beyond the boundaries and definitions of the Act. Paramount is the injured worker's right to be fully compensated.

Sayre's right to be fully compensated defeats McGough Construction's argument that, because the employer/insurer is responsible under the Act for paying loss of earning capacity damages, Sayre should not be permitted to seek such damages from McGough Construction. The employer/insurer, however, is responsible for only a portion of Sayre's loss of earning capacity damages. *See* Minn. Stat. § 176.101 (setting workers' compensation benefit schedule).

The total amount of his loss of earning capacity damages has yet to be determined. Once this amount has been established by way of settlement or trial against the third-party tortfeasor, there may be a deduction from that amount of the workers' compensation paid and payable by the employer/insurer for loss of earning capacity. *See Folstad v. Eder*, 467 N.W.2d 608, 614 (Minn.1991). This resolution restricts the liability of the employer/insurer, yet makes Sayre whole by holding McGough Construction accountable for Sayre's otherwise unrecoverable damages to the extent McGough Construction is liable. *See Berg v. Jasper Dev. Corp.*, 1997 WL 177655 (Minn.App. 1997) (reducing tort damages award by amounts paid and payable for past and nonspeculative future damages recoverable under the Act), *review denied* (Minn. May 28, 1997).[3]

We have attempted to reconcile the limitations imposed by the Act with Sayre's right as a plaintiff to be fully compensated by the third-party tortfeasor who caused his injury. Permitting Sayre to pursue his claim for loss

---

**3.** We recognize that, as an unpublished decision of this court, *Berg* has no precedential value and normally would not be cited. Its similarity to the situation here, however, makes it particularly relevant.

of future earning capacity should achieve this result.

Federal case law, while not controlling, is instructive and consistent with our holding. *See, e.g., Van Gordon v. Beaver*, 928 F.Supp. 858, 865 (D.Minn.1996), (limiting employee's action against third-party tortfeasor to damages *not* compensable under workers' compensation but permitting employee to include in that action future chiropractic expenses because "she bears some potential of incurring such expenses without reimbursement from the Employer/Insurer").

## DECISION

Sayre may pursue his claim for loss of earning capacity against the tortfeasor.

**Reversed.**

SHUMAKER, Judge (dissenting).

I respectfully dissent. Although I applaud the majority's effort to construct a rule that will provide the injured employee with an opportunity to be made whole, that effort seems to contravene the holding in *Tyroll v. Private Label Chemicals, Inc.*, 505 N.W.2d 54, 59 (Minn.1993), and to ignore the compromise nature of the workers' compensation law.

*Tyroll,* a *Naig*-type settlement case, limited the employer's subrogation recovery to past and future wage loss and loss of earning capacity because:

> We conclude that common law tort damages for past and future wage loss and loss of earning capacity are the kind of damages that should be deemed recoverable under workers' compensation. Common law damages of the kind not recoverable under workers' compensation should, we think, be deemed to include pain and suffering, general disability, embarrassment, disfigurement, and mental anguish.

*Id.*

The majority's approach shifts the focus from a substantive rule of damages to procedures and parties. Thus, the substantive rule of loss of earning capacity as established in *Tyroll* changes, at least in application, depending on whether the case involves a *Naig* or a reverse-*Naig* settlement. I can conceive of neither logical basis nor legal principle to support such an approach.

I think the federal court in *Van Gordon v. Beaver*, 928 F.Supp. 858, 862–63 (D.Minn. 1996), properly applied *Tyroll* in a reverse-*Naig* situation, holding that a plaintiff's action against a third-party tortfeasor

> [e]ncompasses two separate claims. The first involves an action against the tortfeasor for those damages that are "non-recoverable" under Minnesota's workers' compensation law—namely, damages for "pain and suffering, general disability, embarrassment, disfigurement, and mental anguish.
>
> \* \* \* \*
>
> As a second component of the plaintiff's action, she is statutorily authorized to prosecute a claim, which includes her employer/insurer's subrogation interest against the tortfeasor \* \* \*. Quite logically, this latter claim is limited to those damages which are "recoverable" under the workers' compensation laws—such as those for past and future medical expenses, past and future wage loss, and loss of future earning capacity.

*Van Gordon,* 928 F.Supp. at 862–63.

When the employer/insurer settles its subrogation interest with the third-party tortfeasor, however, the plaintiff loses that component of her action against the tortfeasor.

Finally, both the trial court and the majority express concern that an injured employee might not be made whole under the limitations of the workers' compensation system. Perhaps that is correct, but the concern fails to reflect an acknowledgement of the compromise nature of the system. *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 120, 257 N.W.2d 679, 684 (1977), explained that in "exchange for guaranteed compensation for injury regardless of \* \* \* fault \* \* \* the employee is limited to a fixed schedule of recovery \* \* \*."

I would affirm.