Margaret SCHLICHTE,
et al., Respondents,

v.

Dale KIELAN, et al., defendants
and third-party plaintiffs,
Appellants,

People's Electric Company, Third–
Party Defendant.

No. C6–99–2.

Court of Appeals of Minnesota.

Sept. 14, 1999.

William D. Harper, Paul D. Peterson, Law Office of William D. Harper, Chartered, Woodbury, MN (for respondents).

Lawrence J. Skoglund, Erstad & Reimer, Minneapolis, MN (for appellants).

Considered and decided by TOUSSAINT, Chief Judge, RANDALL, Judge, and ANDERSON, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Respondents Margaret Schlichte and Glen Schlichte filed a personal injury action against appellants Dale Keilman, Gary Pullman, and Met–Con Construction, Inc., after Peggy Schlichte was accidentally injured during an accident at work. The jury determined that appellants' negligence was the direct cause of respondent's injuries and awarded damages in the amount of $790,000. Following the jury verdict, a Tyroll hearing was held to determine set-offs to the verdict based on workers' compensation benefits paid and payable. The trial court reduced the award by the amount of workers' compensation benefits paid. Appellants challenge the trial court's refusal to reduce the award for future loss of earning capacity, retraining, future disability, and future medical expenses. Because the trial court concluded that recovery of these benefits under workers' compensation is speculative, we affirm.

## FACTS

In 1995, respondent Margaret Schlichte was employed by People's Electric as an electrician. While respondent was working at the Malt–O–Meal plant, appellant Dale Kielan, an employee of appellant Met–Con, while working, accidentally dropped a steel pole on respondent from an overhead catwalk. Respondents filed the personal injury action against appellants in 1997.

Prior to trial, appellants entered into a reverse-Naig settlement agreement with People's and its workers' compensation insurance carrier. For $25,000, People's and its workers' compensation insurer released appellants from any subrogation claims for workers' compensation benefits paid or payable to Margaret Schlichte.

At trial, the parties agreed that a Tyroll hearing would be held after the jury verdict for the court to determine the appropriate reduction in damages based on workers' compensation benefits paid and payable.

The jury returned a verdict in favor of respondents, awarding damages totaling $790,000. The jury-awarded damages breakdown and the trial court's reductions for workers' compensation benefits already paid are as follows:

| Damages | Jury award | Reduction | Net award |
| --- | --- | --- | --- |
| Past loss of earnings | $ 5,000 | $ 1,958. | $ 3,042. |
| Past medical expenses | 25,000 | 13,018.16 | 11,981.84 |
| Past pain and suffering | 20,000 | | 20,000 |
| Past disability | 12,000 | | 12,000 |
| Future loss of earning | 435,000 | | 435,000 |
| Retraining | 100,000 | | 100,000 |
| Future medical | 75,000 | | 75,000 |
| Future pain and suffering | 70,000 | | 70,000 |
| Future disability | 42,000 | | 42,000 |
| Loss of consortium | 6,000 | | 6,000 |
| | $790,000 | | $775,023.84 |

At the Tyroll hearing, appellants called as an expert witness Barbara Heck, an attorney who practices exclusively in the area of workers' compensation. Heck testified that, in preparing for the hearing, she assumed, in part, that plaintiff will (a) have flare-ups of her injury; (b) be unable to continue working in her current position; and (c) find a lower-paying job. But Heck admitted that: (a) if respondent remains employed, she will not have a claim for wage loss unless her wage fall below their level at the time of injury; (b) there is no guarantee that a workers' compensation court would entertain respondent's claims; and (c) there is no way to determine with reasonable certainty what worker's compensation benefits respondent will receive in the future.

Respondents called expert witness Steven Hawn, an attorney with extensive experience in workers' compensation cases. Hawn testified that (a) future workers' compensation claims may or may not be awarded by a judge and that the jury's decision in this case will have no relevancy to a future workers' compensation claim; (b) even if all of appellants' assumptions were to come to pass, workers' compensation benefits could still be denied; and (c) retraining benefits are rarely granted. Finally, Hawn concluded that, although it is possible that respondents will receive future workers' compensation benefits, it is very speculative.

The trial court denied a reduction in damages for future loss-of-earning capacity, retraining, future disability, and future medical expenses. The denial was based on the trial court's conclusion that (1) appellants had not sustained its burden of establishing that respondent will receive future workers' compensation benefits; and (2) respondents' possibility of recovering those damages under workers' compensation is speculative.

## ISSUE

Did the trial court clearly err by denying reductions to the jury award based on future damages after concluding that recovery of those damages under workers' compensation is speculative?

## ANALYSIS

 On appeal from a judgment, this court's scope of review is limited to deciding whether the trial court's findings are clearly erroneous and whether it erred in its legal conclusions. When the trial court's findings are reasonably supported by the evidence, they are not clearly erroneous * * *.

*Blaine Econ. Dev. Auth. v. Royal Elec. Co.*, 520 N.W.2d 473, 477 (Minn.App.1994) (quoting *Citizens State Bank v. Leth*, 450 N.W.2d 923, 925 (Minn.App.1990)).

 Appellants first argue that the trial court addressed the issue of whether respondents' future damages are reasonably certain to occur, contending that review of this issue violates the doctrine of collateral estoppel. Appellants' argument is not consistent with Minnesota caselaw. Collateral estoppel applies where

(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982) (quoting *Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71, 74 (D.Minn.1979)). Collateral estoppel does not apply unless an issue has been actually litigated and decided. *In re Trust Created by Hill*, 499 N.W.2d 475, 484 (Minn.App.1993), *review denied* (Minn. July 15, 1993). The trial court did not question whether future damages are reasonably certain to occur, as the jury had already concluded, but rather, it addressed whether respondent would prevail on a workers' compensation claim for future damages.

Appellants also argue that, if future damages do occur, then a workers' compensation claim must cover these damages if they are reasonable, necessary, and related to the injury. Appellants provide no authority for this argument.

■ Although an award of benefits should be reduced by the "amount of the workers' compensation paid and payable by the employer/insurer," *Sayre v. McGough Constr. Co.*, 580 N.W.2d 503, 505 (Minn.App.1998) (citation omitted), *review denied* (Minn. Aug. 18, 1998), future workers' compensation benefits cannot be found to be "payable," if after the Tyroll hearing, the trial court concludes that recovery of those benefits is merely speculative. *See Tyroll v. Private Label Chems., Inc.*, 505 N.W.2d at 61 (explaining that in calculation of workers' compensation benefits payable in future, trial judge should determine the benefits based on evidence available and by making reasonable assumptions).

■ The trial court's conclusion that recovery of future workers' compensation benefits remains speculative is supported by the testimony offered at the Tyroll hearing. Based on this conclusion, the trial court did not err by refusing to reduce the jury award for future benefits.

## DECISION

■ The trial court did not err by denying reductions to the jury award based on future damages because it found that recovery of those damages under workers' compensation remains speculative.

**Affirmed.**

G. BARRY ANDERSON, Judge (dissenting)

I respectfully dissent.

This case is yet another step in a long journey that began with *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977).

Before discussing the present controversy over the interplay between workers' compensation, subrogation rights, and general tort concepts, a brief history of the evolution of the caselaw may be helpful.

Prior to *Lambertson*, the Minnesota Supreme Court consistently disallowed contribution claims against an employer by a third-party tortfeasor, reasoning that the employer had no liability to the employee in common with the third-party tortfeasor. *Id.* at 687. The employer's exclusive liability was provided in the Workers' Compensation Act, while the third-party's liability arose at common law.

In *Lambertson*, the Minnesota Supreme Court decided the employer should bear its share of the plaintiff's damages in proportion to its percentage share of fault, not to exceed its liability for workers' compensation benefits. *Id.* at 689. *Lambertson* set forth the concept of "joint fault" in the absence of "joint liability" and held that an employer must pay its fair share of the plaintiff's damages not to exceed its total workers' compensation liability. *Id.*

*Wilken v. International Harvester Co.,* 363 N.W.2d 763 (Minn.1985), further clarified an employer's obligation to pay contribution to a third-party tortfeasor. The employer's liability for contribution was established as including workers' compensation benefits already paid as well as benefits due and payable after judgment in the tort action. *Id.* at 767. The employer's contribution liability for future workers' compensation benefits was to be determined by reducing future workers' compensation benefits to present value and paying that amount as contribution in a single lump-sum payment. *Id.* Thus, under *Wilken,* an employer could be required to pay contribution based on future workers' compensation benefits that it might or might not ultimately be required to pay.

> After the verdict is in, the trial court can take further evidence to aid it in calculating the amount of the contribution claim and the discount factor. Much of this evidence is of the kind, it would seem, that is best submitted by affidavit, as was done in this case.

*Id.* at 768.

Parallel with the *Lambertson* and *Wilken* developments, practitioners began segregating personal injury claims into subrogable and nonsubrogable categories. *See, e.g., Naig v. Bloomington Sanitation Co.,* 258 N.W.2d 891, 893 (Minn.1977). A plaintiff's nonsubrogable claims could be settled with the tortfeasor in what came to be called a Naig release. Similarly, an employer could settle its subrogation claim for workers' compensation benefits with the third-party tortfeasor; this became known as a reverse-Naig settlement. *See, e.g., Sayre v. McGough Constr. Co.,* 580 N.W.2d 503, 504 (Minn.App.1998), *review*

*denied* (Minn. Aug. 18, 1998). This type of settlement, a factor in the present case, is subject neither to the statutory allocation formula nor to the statutory collateral source deduction. *Folstad v. Eder,* 467 N.W.2d 608, 609 (Minn.1991).

Finally, we come to *Tyroll v. Private Label Chems., Inc.,* 505 N.W.2d 54 (Minn. 1993). *Tyroll* sets out the procedure for determining the amount an employer can recover in a post-Naig subrogation action following a Naig release:[1] "[T]he trial court should hold a hearing to determine the amount of benefits paid and payable." *Id.* at 61.

This brings us to our present controversy. In this case, a Tyroll hearing was necessary, not to determine the amount of the employer's recovery, because the employer had already settled with the tortfeasor, but rather to prevent a double recovery by respondent.

Stripped to its essentials, the district court in this case held that respondent's post-verdict workers' compensation claim was so speculative that the tortfeasor should be allowed no offset against the verdict. This holding is at odds with the special verdict and the conclusions reached by the district court based on that verdict.

Respondent's injuries are permanent. Limitations on her ability to work are also permanent. The gravamen of the underlying personal injury case was that respondent is presently in a career where she is unable to perform most of her assigned duties. The jury agreed with this conclusion, returning a verdict for $435,000 for loss of future earning capacity. According to the jury, and confirmed by the district court in its ruling on posttrial motions, respondent has already suffered $25,000 in

---

1. *Tyroll* suggests that the court proceeding to establish the amount of workers' compensation benefits paid or payable should be conducted prior to the jury trial, but, as practitioners have noted, it may make more sense to conduct that proceeding after the jury trial. If there is a defense verdict, for example, there would be little reason to conduct a posttrial hearing relative to the amount of workers' compensation benefits. *See* William M. Bradt & Wilbur W. Fluegel, *Third–Party Practice, in The Minnesota Workers' Compensation Deskbook* § 16.8 at 16–9–10 (Jay T. Hartman & Thomas D. Mottaz eds., 2d ed.1997).

medical expenses and is likely to incur $75,000 in future medical expenses. Not only did the jury consider that respondent's injuries are serious and her damages substantial, but also the district court noted: "based upon the evidence presented, an even higher award of damages than that awarded, could be justified." Against this backdrop, the district court observed in the memorandum accompanying the judgment

> the issue is not merely whether [respondent] will incur future damages payable under the Workers' Compensation Act, but rather, the speculativeness of whether [respondent] has a workers' compensation claim, whether [respondent] will pursue such a claim, whether such a claim would be entertained by the workers' compensation court, and finally, whether [respondent] would prevail on such a claim.

The observations of the district court do not square with reality. While some portions of the workers' compensation claim may be so speculative that no offset should occur, what are we to make of a jury finding that future medical expenses of $75,000 are "reasonably certain" to occur? Surely an offset in some amount to prevent a double recovery is in order.[2]

It is equally hard to square the jury's finding of "reasonably certain" loss-of-earning capacity of nearly a half-million dollars with the district court's finding that *all* future wage loss under the Workers' Compensation Act is "speculative." Here, too, there is room to argue about how much of the jury finding translates into amounts recoverable under the Workers'

Compensation Act, but the conclusion that the district court reached that the amount is zero is completely unsupportable.

Workers' compensation benefits in this case were apparently terminated by the insurer following an independent medical examination. No subsequent claim petition has been filed by the employee-respondent, who now argues that her ability to receive benefits is somehow "speculative" because she is not receiving benefits and must file a claim to receive future benefits.

This argument, while creative, falls apart upon examination. Taken to its logical conclusion, whether an employee receives a double recovery is determined not by the merits of his or her case, but rather by whether the employee has been blessed (or cursed, depending on your view), with an aggressive workers' compensation insurer.

The district court, in its memorandum, noted as a basis for its finding of speculativeness that respondent's claims are not certain and that those claims "will be defended and litigated." This is not, and cannot be, the law in Minnesota. If *Tyroll*, *Folstad*, and related cases are to have any meaning, the right to an offset from the verdict cannot be discarded simply because the district court believes that a workers' compensation claim is speculative or that the case will be "defended." That rationale could be advanced to deny an offset in virtually every case. It is particularly weak in circumstances like the present controversy, where there has been a very significant recovery by the potential workers' compensation claimant.[3]

---

2. I reject, however, appellants' argument for a dollar-for-dollar reduction. This position is unsupported by the law and, in fact, ignores the reality that medical expenses in workers' compensation cases are subject to significant administrative review. Minn.Stat. § 176.136, subd. 1(a) (1998), provides "[t]he commissioner shall by rule establish procedures for determining whether or not the charge for a health service is excessive." The standard used by the commissioner may or may not bear a relationship to the standard used by

the jury in arriving at future medical expenses. Thus, the district court must determine the specific amount recoverable under workers' compensation.

3. The time may have come for the supreme court to address in greater detail what is, and is not, recoverable under *Tyroll*. For example, *Tyroll* specifically recognized

> retraining expenses [as] reasonable and proper payments under the Workers' Com-

On the facts of this case, I would reverse and remand for a new Tyroll hearing.

pensation Act[.] * * * [T]hese expenses, related as they are to a restoration of earning capacity, are recoverable in the subrogation action even though there is no comparable item of common law damages.

*Tyroll*, 505 N.W.2d at 61. But the district court in the present controversy apparently accepted the opinion of one of the expert witnesses that "retraining benefits are rarely granted." Does this mean, despite *Tyroll's* language to the contrary, that a claim for retraining benefits can now be defeated in Minnesota in a Tyroll hearing simply by testimony from an expert that in his or her experience such benefits are "rarely granted"? Similarly, the district court in this case never specifically analyzed appellants' claim that a setoff in the amount of $13,416 would be appropriate because respondent is entitled to 26 weeks of economic recovery compensation. The supreme court has not indicated whether or not economic recovery compensation is something for which an offset may be granted.